## SNYDER v. RYAN
(No. 1424; Oct. 16, 1928; 270 Pac. 1072)
(Rehearing denied March 12, 1929)

268

*S. E. Phelps,* for appellant.

*John D. Dawson* and *C. Leonard Smith,* for respondents.

*S. C. Phelps,* in reply.

METZ, District Judge.

This is an action brought by the plaintiff Snyder as against the other parties defendant to declare a number of conveyances to be fraudulent, and to have the real estate covered thereby subjected to the judgment of the plaintiff. It appears that in May, 1918, the plaintiff was injured in an automobile accident caused by the defendants Ryan and Dea, and on October 27, 1920, she recovered judgment in the District Court of Converse County against the defendants Ryan and Dea in the sum of Fifteen Hundred Dollars.

The principal object of this litigation is to impress the Morgan property, consisting of Lot 6, Block 20, in the Town of Glenrock, and the Smyth property consisting of Lot 4, Block 13, in the Town of Glenrock with a lien subject to this judgment secured by Mrs. Snyder. Lot 6, Block 34, and Lot 23, Block 37, of Higgins subdivision of the Town of Glenrock are also mentioned in the petition. The title of the former seems to still stand in the name of Jerry O'Neil, but this appeal does not affect him, default having been taken against him. The defendant Lockenour appears to be the owner of Lot 23, Block 38, according to the record of title, and whether this property is of any value or not is not shown. The real controversy is over the Smyth and Morgan properties. The defendant Ryan became the owner of all these properties prior to May 20, 1918, but in August, 1918, after the automobile accident and prior to the filing of the damage suit, he conveyed Lot 4, Block 13, to Jerry O'Neill for a consideration of two thousand dollars, and in March, 1919, he sold the remainder of the property to a Mrs. Ford for the purported consideration of one dollar and other val-

uable consideration, and on the same day Mrs. Ford conveyed this property to the defendant O'Neill, so that on March 11, 1919, all the property in controversy stood in the name of O'Neill. On February 16, 1923, the defendant Lockenour became the grantee of this property with the exception of Lot 6, Block 34, by a conveyance made to him by Jerry O'Neill, and the defendant Ryan's quit claim deed to Lockenour on the same property was apparently to clear any defect that might exist in the title. On April 3, 1923, Lockenour conveyed Lot 4, in Block 13, to Smyth for the purported consideration of one thousand dollars and other good and valuable consideration, but the evidence shows the actual consideration was the sum of three thousand dollars, and about this same time Lockenour conveyed Lot 7, Block 20, to the defendant Morgan for a consideration of six hundred dollars, which the evidence shows was the approximate value of the property.

The plaintiff seeks to set aside each and all of these conveyances and impress the property with her alleged lien upon the theory that Ryan conveyed his property in contemplation of a suit being filed and to hinder, delay and defraud the plaintiff from collecting her judgment, and charging each and all the defendants, excepting Dea, with fraud or knowledge of the fraud.

In the case of Snyder v. Ryan and Dea, in which Mrs. Snyder secured a judgment for fifteen hundred dollars, the defendants appealed the case to the Supreme Court, and on January 6, 1923, the judgment of the lower court was affirmed by the Supreme Court in the case of Ryan v. Snyder, 29 Wyo. 146, 211 Pac. 482. Shortly after that the plaintiff had an execution issued, which was returned showing no property to be found belonging to the defendants. On January 24, 1924, the present action we are now considering was started in the District Court.

The defendants Lockenour, Smyth and Morgan, and the Glenrock Building and Loan Association appeared and

defended the case in the lower court under a general denial and pleaded the statute of limitations and laches. The lower court found generally in favor of the defendants and against the plaintiff, and from that judgment appeal was taken to this court.

The main contention of the appellant herein is that the evidence taken in the lower court is insufficient to sustain the judgment of that court. The briefs were very exhaustive and covered the evidence from every angle, and after reading these briefs and the record we can not agree with the appellant on this contention as to the Morgan and Smyth property. The general finding by the lower court in favor of the defendants certainly implied a finding that the defendants Smyth, Morgan and the Building and Loan Association were purchasers in good faith for a valuable consideration without knowledge of any fraud and we think that the evidence in this case is ample to sustain such finding. The parties so testified and the lower court heard their testimony and had a right to accept it and we do not feel warranted in disturbing the findings of that court in this matter. The evidence clearly shows to us that Smyth and Morgan acted like the average business man in purchasing property and that they relied upon the abstracts of a reputable abstract company furnished them before purchasing the property; these abstracts do not show any defects in the title. Smyth and Morgan also testified that they had no knowledge whatever of any judgment in favor of Mrs. Snyder, and certainly the abstracts of title examined and relied upon by purchasers of real estate are admissable in evidence in connection with oral testimony to show good faith on the part of the purchaser.

Appellant's contention that the evidence showing another consideration than that mentioned in the Smyth deed was not admissible is without merit. It was shown that Smyth paid three thousand dollars to Lockenour

notwithstanding the deed recited the consideration to be one dollar and other valuable consideration.

While it may not be the common practice, nevertheless it is very often the case, that the real consideration for transfers of real estate is not disclosed in the instrument itself. It certainly is common knowledge that a great many deeds recite a comparatively nominal consideration, when in fact a much larger consideration is paid, and certainly in a suit of this character the purchaser should be allowed to testify what he paid for the property. 27 C. J. 526, 818; Peterson v. Tull, 85 Wash. 546, 148 Pac. 598. It is further contended here by the appellant that all of the conveyances from Ryan clear down to Morgan and Smyth were fraudulent, and made for the purpose and with the intention of defrauding the plaintiff and keeping her from collecting her judgment through an execution on the property originally owned by Ryan. Appellant further contends that if anyone of these earlier transfers were fraudulent that the subsequent owners of the property through a chain of title could not hold the property and that their title would be void and of no effect. We cannot agree with appellant on this proposition. We do not understand the law to be as contended by appellant.

The fraudulent character of the conveyances between the original parties does not *per se* affect the title of a purchaser or other transferee from a fraudulent grantee, and the rights of creditors of a fraudulent grantor to set aside a sale and void it cannot be exercised against one who, without notice of the fraud, has in good faith for value purchased the property from the fraudulent grantee. Under these circumstances he acquires a good title as against the creditors of a fraudulent grantor. 27 C. J. 693. It appears that there is some dispute among the authorities as to whether or not a judgment rendered after a fraudulent transfer becomes a lien upon the prop-

erty that has been fraudulently conveyed. 34 C. J. 589. But if it does, the lien certainly ceases to operate when the land is conveyed to a bona fide innocent purchaser. 34 C. J. 598. The appellant further contends that any testimony showing the good faith of Smyth and Morgan and the Building and Loan Association was not admissible, and should not have been received by the court because they, or some of them, failed to plead good faith and that they were innocent purchasers.

Smyth and Morgan answered jointly with Lockenour, and because of their answers being joined the appellant attemps to brand Smyth and Morgan with the knowledge of fraud because, the appellant contends, that proved the transaction by Lockenour to be fraudulent, but we fail to see the force of this contention, because they might brand Lockenour with fraudulent acts and transactions and Smyth and Morgan know nothing about it, and the outcome of their case should not be governed by what might be proven against Lockenour. Counsel for the appellant seems to rely upon some statement in the case of Wyoming Stockmen's Loan Co. v. Johnston, in 33 Wyo. 457, 240 Pac. 449, where a statement is made in relation to the necessity of the defendant to plead the amount of consideration paid by him. The facts in the Stockmen's Loan Association case are not at all similar to those being discussed here. The plaintiff in her petition in substance alleges that Smyth, Morgan and the Building and Loan Association were not purchasers in good faith, but had knowledge of the character of the fraudulent transactions. A number of cases hold that under these circumstances the plaintiff will be compelled to prove the allegations as made. Verner v. Verner, 64 Miss. 184, 1 So. 52. We need not decide that point in this case nor go so far as that, but there can be no doubt that the plaintiff's petition supplies whatever defects there might have been in the answer, and certainly the defense of good faith

could under these circumstances be shown notwithstanding they were not pleaded in the answer.

This seems to be the rule in connection with the plea of bona fide purchasers of negotiable instruments. 8. C. J. 967; and we see no reason why that should not be the rule here. But whether it is or is not the rule, no objection whatever was offered to this character of testimony on behalf of the respondents in the lower court on the ground now alleged in this court, but on the contrary the case, apparently from the record, was tried on the theory that the defense of good faith could be shown under a general denial, and there is a great deal of testimony along this line in the record, and it is too late now for the appellant to complain and try to allege the contrary.

There is considerable evidence in the record showing that the later transfers of these properties was for considerable sized sums of money, and surely the mortgages to the Building and Loan Association and the loans of money in the thousands of dollars by the Building and Loan Association on these properties should be safe-guarded and the plaintiff required to show clear and convincing acts of fraud and knowledge brought home to them in no uncertain manner before the funds of the Building and Loan Company should be lost. There are a lot of suspicious circumstances and acts on the part of Ryan in the early transactions and conveyances, but there is no question in our minds that the lower court was amply warranted in holding, as it undoubtedly did, that the defendants Smyth, Morgan and the Building and Loan Association were all innocent purchasers for value.

We do not deem it necessary to go into and discuss the evidence in this case in full. What we have said above substantially disposes of the case without reference to the numerous errors which appellant complains of, because if these alleged errors were errors they had no particular

bearing upon the question in this case. The real question in the case is, did Smyth, Morgan and the Building and Loan Association come into the class of bona' fide innocent purchasers for value, and we believe they did. Under our theory of this case and the law the appellant might have shown Ryan to be a rascal and his transfers all made with the idea and intention of defrauding the plaintiff and covering up his property under fraudulent deeds to defraud his creditors and still that could not in any way effect our conclusions that Smyth, Morgan and the Building and Loan Association were purchasers in good faith.

Counsel argued at great length and have devoted pages of their briefs contending that the deed from Mrs. Ford was a forgery and that the Ford deed and the O'Neill deed were never delivered. There was some testimony tending to show that the Ford deed was a forgery, but there was positive testimony to the contrary. The deeds were executed, accepted and recorded and the presumption arises therefrom that they were delivered. 18 C. J.. 207, 414, 415, 419. Counsel argued also that the testimony tends to show that one of the deeds remained in the possession of Ryan and that hence no delivery can be presumed. We do not see that it is necessary to go into that question, for the facts remain that Lockenour got title direct from Ryan by conveyance and Smyth and Morgan were purchasers in good faith from Lockenour, and their title is good without any reference whatever to the question of forgery or non-delivery of the Ford and O'Neill deeds. There was no indication on the records that there was any forgery or lack of delivery of any of the deeds and it certainly cannot be claimed that there was anything in connection therewith that would put Smyth and Morgan upon any inquiry.

Error is also assigned that the court excluded certain testimony to the effect that after the execution of the

deeds by Ryan part of the property in controversy was assessed and taxed to Ryan and that Lockenour paid these taxes and this assessment and the payment mentioned was sought to be shown by the records in the office of the county treasurer. There was no evidence whatever introduced that Ryan had any knowledge of these assessments or that he in any manner consented to them. If they had offered assessment schedules signed by Ryan in which he listed these lots as his property there might have been some basis for the introduction of this evidence, but the mere fact that an assessor assesses property to a man does not prove ownership, and we do not understand that it is the custom or duty of the purchaser of a piece of land to look up the assessment records to see in whose name the property is assessed. The county clerk and recorder's records show the title of real estate and not necessarily the assessor's records, and even if they had looked up the record and found it was assessed to Ryan that would not necessarily indicate that the transfers made by him were fraudulent and that subsequent purchasers would have to take notice of such fraud by reason of such assessment. See generally on this subject 27 C. J. 819, Sec. 768.

We do not understand the statute to mean that a county treasurer's records are admissible as evidence in every case, regardless of whether they are competent or not, which seems to be the theory of the appellant in this case. We understand the rule to be that the records are admissible if they are competent and relevant to prove the issues in the case in which they are offered. The mere fact that they are public records does not make them admissible.

It is common knowledge that city lots are frequently assessed in the wrong name and to the wrong parties. Under the very nature of things it is impossible for the county assessor through his numerous deputies to always secure the owner's name on the assessment schedule and

they just use their best judgment as to who they think the owner is. The fact that the records were not permitted to be introduced to show payment of the taxes by Lockenour cannot be prejudicial to the appellant; such payment might simply have been made as indicating a claim of title or right in property (Hogdon v. Shannon, 44 N. H. 572), and in this case the payments made by Lockenour seem to have been made, according to the record, about the time he acquired title to the property in controversy, which could indicate he was paying them for his own benefit and the exclusion of the testimony could not prejudice the appellant, and if appellant's contention is correct, the payment of the taxes by Lockenour could not effect Smyth and Morgan nor the Building and Loan Association, unless they had actual knowledge of the facts.

Numerous other errors are claimed by the appellant along this same line. We cannot see that the evidence could in any way effect these purchasers in good faith without their actual knowledge of the facts and if the rejection was an error on the part of the lower court it was error without prejudice.

The appellant further contends that the lower court should not have allowed the introduction of evidence tending to show that Dea was solvent, it being remembered that Dea was a co-defendant with Ryan in the original suit for damages brought by Mrs. Snyder for the automobile collision. The lower court on application allowed the amended answer to be filed and we feel that is a matter of discretion with the lower court, and the parties went to trial on the pleadings as then made up and it is claimed this testimony is immaterial under the holding of this court in the case of Wyoming Stockman's Loan Company v. Johnson, 33 Wyo. 457, 240 Pac. 449. While appellant's contention may be correct that the evidence was immaterial, nevertheless, it could not effect the hold-

ing of the court that Smyth, Morgan and the Building and Loan Association were purchasers in good faith.

We do not deem it necessary to extend this opinion any further by discussing the evidence. The real point in the case, as stated above, was the question of good faith of Smyth, Morgan and the Building and Loan Association, and we feel that the evidence amply supports the finding of the lower court that they were purchasers in good faith.

From what has been said above it follows that the judgment of the District Court should be affirmed, and it is so ordered.

BLUME, Ch. J., and KIMBALL, J., concur.

ON PETITION FOR REHEARING

METZ, District Judge.

Counsel for plaintiff has filed in this court a petition for rehearing in the above entitled case. We have read and considered this petition for rehearing, also his numerous briefs filed in support thereof.

The filing of several briefs in connection with a petition for rehearing is a practice that cannot be commended and which, perhaps, should be condemned. Counsel filing such a petition should be prepared to comply with our Rule No. 23, that requires the brief to accompany the petition for rehearing, thus additional briefs, except at the court's request, ought not to be filed.

The petition for rehearing, in substance, alleges that: First, the Ryan conveyances were fraudulent and absolutely void; second, the Snyder judgment was a lien against the lots, under Section 5957, Wyo. C. S. 1920; third, that no one was a bona fide purchaser, under the evidence in the case; fourth, the decision is against the law and the evidence.

Nearly all of the points presented and argued are identical with those extensively argued in the original hearing, and we do not feel warranted in going over that ground again. Suffice it to say, we are of the same opinion now as then.

Counsel contend that there cannot be an innocent purchaser in this kind of a case. Counsel should reflect, however, that if his contention were correct, there would be no stability in titles whatsoever, and the recording of conveyances would be a mere empty form, an abstract of title a useless paper, and no one could buy property with a feeling of security. Bonds, mortgages and trust deeds secured by real estate would be of speculative value only, and there would be no end to litigation over titles to real estate. We cannot, of course, lend our aid to any such doctrine.

The trial court had all the evidence before it, including the evidence of Smyth that, counsel contends, indicated that Smyth had knowledge of Ryan's ownership of the lot that he purchased. We have examined all of Smyth's testimony, and the lower court weighed it, and we feel correctly so, and we do not feel justified in saying Smyth had such knowledge, under the law and circumstances in this case, as to take him out of the innocent purchaser class he was placed in by the lower court.

All of the facts brought out in the trial of the cause, and actions of the parties, were circumstances only, for the consideration of the trial court in determining who were innocent purchasers. From our examination of the record, we are now of the same opinion as before, that they were innocent purchasers for value.

Counsel devotes considerable space in his brief discussing the law of presumptions, especially in relation to a purchaser buying property from a record title owner and finding another person in actual possession of the premises. He discusses fully the presumption of mere claim

or right of title existing in the actual occupant of the premises which could be maintained against the claims of the purchaser.

We have no fault to find with those cases cited except that they are not in point in this case. Ryan was not in actual possession of the premises; the people living on the premises never claimed any right to the lots; Ryan did not claim any right or ownership in the lots as against the innocent purchasers, at least, and the cases cited were the result of disputes as to ownership between the occupying claimants and purchasers or mortgagees of the premises.

Counsel further contends that the case of Culver v. Graham, 3 Wyo. 211, should be sufficient in itself to entitle him to a rehearing. We cannot see where he gets any consolation out of that opinion, because the court went on to say in that opinion that as between the parties, had the transaction been a bona fide one, the equitable lien would have held, notwithstanding the defective acknowlgment, but if the property had been sold by Emery (the fraudulent grantee) the next day to an innocent purchaser, the lien would have ceased to exist.

Plaintiff in this case secured her judgment in October, 1920, against Ryan, et al., for damages, but she did not file this present case until in January, 1924. If her present suit had been filed prior to the passing of the title into the hands of innocent purchasers for value, she might have accomplished her desire of setting some of the conveyances aside as fraudulent. But she waited too long, and allowed innocent purchasers to become involved in the controversy.

Counsel relies upon Freeman on Judgments, 5th Ed., Sec. 954, and cites a great many authorities holding a judgment creditor may follow up and pursue the property into the hands of a fraudulent grantee. We have no fault to find with those authorities, except that they are

not in point, as that is not the situation in the present case, as we have expressly held that the trial court was justified in finding that Smyth, Morgan and the Building and Loan Association were innocent purchasers for value. Freeman on Judgments, 5th Ed., Sec. 954, states in part:

"Whoever goes out with an execution to seek the fruits of his judgment is too apt to find that fraud has forestalled him. It then becomes his business to pursue those fruits wherever fraud has taken them; to wrest them from the possession of his adversary, wherever they may be found; and to prepare himself to show that the refuge to which they had been taken is still the refuge of fraud. * * * As against the fraudulent transferee, the creditor may seize the property, whether real or personal, as that of the fraudulent vendor, and may proceed to sell it under execution * * *."

Counsel further contends that there was a secret trust and thus his client should recover; his contention would be much more likely of success if innocent purchasers did not stand in his way, but they are surely not holding under a secret trust.

Counsel then continues to go over the question we disposed of in the former opinion. It is also contended that the Ryan conveyance was void, and no one could secure title through his grantee. The authorities cited are not in point under a set of facts as exist in this case.

We cannot subscribe to the rule contended for by counsel, and we still believe the rule we laid down in our former opinion is the correct one.

Counsel again devotes a number of pages of his last brief on the question of fraud and the manner of proving it, etc. We gave that question a full and careful consideration in the previous hearing and we are not so concerned with it now. The facts and circumstances, of course, as contended by counsel, ought to be considered by the trial court.

There was conflicting evidence, and there were facts and circumstances as to some of the transactions earlier in the proceedings that were of suspicious nature, and, if the court had found them to be fraudulent, we do not see where it would have made any particular difference in this case, because, as we have reiterated before, this is a case where innocent purchasers are involved, and is not a case where a judgment creditor was attempting to take property from the hands of a fraudulent grantee.

We have given this case considerable time and have found no reason for changing our former opinion. The petition for rehearing is denied.

BLUME, C. J., and KIMBALL, J., concur.