FRANK I. RUE, ET AL. v. L. B. MERRILL, ET AL.
(P. W. Metz, et al., Interveners)
(No. 1649; March 31, 1931; 297 Pac. 375)

498

For the appellant G. A. Brown there was a brief by *D. L. O'Hern,* of Miles City, Mont., and *C. R. Ellery,* of Cheyenne, Wyoming, and oral argument by *Mr. Ellery.*

For the intervening petitioners and respondents there was a brief by *Thomas M. McKinney* and *Robert B. Landfair*, both of Basin, Wyoming, and oral argument by *Mr. Landfair* and *Mr. McKinney*.

500

BLUME, Justice.

This action was brought by Rue and another against Merrill, Shupak and Brown. The interveners intervened, asking that their title to nine-tenths of certain royalties in dispute be quieted in them. The defendant Merrill was not served and did not appear in the case. The defendants Shupak and Brown filed a cross-petition asking that the title to the royalty in dispute be quieted in the defendant Brown. The interveners do not dispute among themselves, and for the sake of brevity will be hereinafter referred to as such, intermediate conveyances among them will be disregarded, and they will be considered herein as having had the interests which they claim from the beginning. The decree of the trial court was in favor of the interveners as against the defendant Brown, and from that decree the latter has appealed. Interveners did not receive quite as much as they asked, but they do not complain. Bearing the foregoing in mind, the facts herein are substantially these:

In the year 1920, Rue, one of the plaintiff's herein, and the interveners became interested in locating some oil claims in what is called the Oregon Basin, in Park County, Wyoming, under the general leasing act of the government of the United States, and an oral agreement was entered into that they should share equally in whatever permits should

be issued. Applications under that law were made by the respective parties, and permits were issued to some of them, including the plaintiff Frank I. Rue. Six permits in all were issued. That of Frank I. Rue, one of the plaintiffs herein, covered Sections 21, 22, 27 and 28, Township 51 North, Range 100 West. On December 22, 1921, the interveners and Rue entered into a written agreement reciting the various permits issued to them, including that issued to Rue, and agreed that they should "share alike in any moneys, goods or chattels derived therefrom, be it for sale, lease, royalties or other revenues derived from the lands herein named," but that "no action in regard to sale, lease or other transaction shall be taken until all parties interested shall have agreed upon such transaction either before or after the offer is made." The Rue permit is the only one in question in this case. It was issued for the period of two years and expired on March 14, 1923. Nothing was done under the permit for some time. About the month of October, 1923, Rue met the defendant L. B. Merrill in Montana and induced him to undertake to find a purchaser for his permit. Pursuant to a phone-call, he met Merrill a day or two before the 16th of January, 1923, in Miles City, Montana. About, or a little before, that time, R. B. Landfair, one of the interveners, talked to Merrill over the telephone, informed him of the parties interested in the permit, and that he and his associates wanted to be consulted before any contract in connection therewith was signed. They were, however, never consulted. About January 15, Rue met the defendant Brown, as a prospective purchaser for the lease. Negotiations between them resulted in a contract between Rue and Brown, dated January 16, 1923, pursuant to which the latter agreed to explore the lands covered by the Rue permit, for oil and gas, reserving a royalty to Rue. The main royalty so reserved was that of 7-1/2 percent. There were other royalties specified in the contract, but for brevity's sake these will not again be mentioned. The permit was assigned to Brown. On the same day Rue entered into

an agreement transferring a part of his royalty interests and rights to L. B. Merrill under an instrument in writing which is as follows:

"KNOW ALL MEN BY THESE PRESENTS, that I, Frank I. Rue, of Basin, Wyoming, for and in consideration of the sum of One Dollar lawful money of the United States of America, cash in hand paid, the receipt whereof is hereby confessed and acknowledged, and of other good and valuable consideration, have sold, assigned, transferred, and set over, and by these presents do hereby sell, assign, transfer and set over unto L. B. Merrill of Bridger, Montana, an undivided one-half (1/2) interest in and to all Royalty interests or rights that I now own in certain lands covered by certain Permits issued to Frank I. Rue, Clyde Atherly, O. J. Rouch, Fred Frisby and William Metz, said lands being situated in what is known as the Oregon Basin near Cody, Wyoming, said Permits now being held by an Association consisting of the above named persons, together with Arthur Burns, D. T. Hand, V. Rodgers and L. B. Landfair, said permits being hereby referred to for accurate and complete description of the lands covered thereby, and in which the Royalty interests hereby assigned are contained.

And I do likewise for the same consideration sell, assign, transfer and set over to L. B. Merrill an undivided one-half (1/2) interest in and to all Royalty rights reserved by me in that certain agreement made and entered into on the 16th day of January, 1923, wherein G. A. Brown, of Miles City, Montana, is party of the first part, and I, the undersigned, party of the second part, said Royalty interest being contained in those lands now covered by Prospecting Permit Serial No. 011796, of the United States Land Office, Lander, Wyoming, said Permit and said agreement being hereby referred to for accurate and complete description of the lands in which the Royalty interest hereby assigned is contained.

Witness:                                    FRANK I. RUE
    W. E. Holt."

This instrument was duly acknowledged. The papers executed between Brown and Rue were placed in escrow in Miles City, Montana, to await delivery until the permit,

which expired on March 14, 1923, should have been extended by the department of the interior. This extension was granted. Thereafter, on May 5, 1923, Brown and Rue entered into a new contract identically the same, except in its date, as that of January 16, 1923. A new assignment of the permit, as extended, was also made on the same day, and was thereafter presented to the Department of the Interior and approved on June 25, 1923. Subsequent extensions of the permit were granted. In the early part of 1927, Brown assigned his interest therein, subject to the royalty of 7-1/2 percent above mentioned, to one Orchard, who proceeded to explore the land for oil and gas, and judging from the record, discovered oil in paying quantity.

The defendant Brown claims one half of the royalty reserved to Rue, pursuant to the transfer made to Merrill on January 16, 1923. This transfer was put of record in Park County, Wyoming, on June 21, 1927. The record discloses a conveyance of this interest from Shupak to Brown, dated May 24, 1924, not witnessed, but acknowledged on June 1, 1927, and placed of record in Park County, Wyoming, on June 3, 1927. This conveyance recites that Merrill assigned his interests to Shupak on April 24, 1924. The record, however, fails to disclose any such assignment. The interveners herein claim under the agreement entered into by them and Rue on December 22, 1921, and under subsequent and specific conveyances made to them by Rue to confirm the foregoing agreement. Rue, by quit-claim deed, transferred all of his interest in his permit and all royalties thereunder to his daughter, Faie O. Sinclair, one of the plaintiffs herein, shortly before the commencement of this action. The interests of the plaintiffs are not considered in this opinion and are involved in a separate appeal.

1. The defendant Brown herein pleaded laches. That defense, however, cannot be sustained. The evidence herein shows that the interveners did not learn of the transfer to Merrill by Rue until about the month of June or July, 1927. They thereupon acted promptly. They not only inter-

viewed Brown personally at Cody, Wyoming, informing him of the rights which they had, but they also, within a short time subsequently, transmitted to him a registered letter in which their claims were set forth. They intervened in this action on August 28, 1928. Under these circumstances we do not think that the plea of laches is well taken.

2. Brown claims also that he is an innocent purchaser for value. The record shows that he paid Shupak the sum of $3000 for the transfer of the royalty interest in dispute, and he testified that he knew nothing of the claims of the interveners until the summer of 1927. But his claim as an innocent purchaser cannot be sustained, for the record fails to disclose any transfer of the royalty interests in dispute from Merrill to Shupak. Courts seem to be unanimous in holding that to enable one to claim the rights of a bona fide purchaser without notice, the title purchased must be apparently perfect and good at law and that no one can claim such rights when he purchased from one without title. 39 Cyc. 1690, 1691; 8 C. J. 1149; Betts v. Ward, 196 Ala. 248, 72 So. 110; Murphy v. Steele, 169 Ark. 299, 274 S. W. 6; Vanhoose v. Fairchild, 145 Ky. 700, 141 S. W. 75. Brown, accordingly, has no better standing in court than Merrill would have had, and he cannot claim the advantage of an equitable title which would have accrued to him by reason of being a bona fide purchaser for value without notice of any outstanding rights in favor of third persons.

3. We think it must be admitted that Merrill was chargeable with knowledge of the rights of the interveners; for that is shown not only by the testimony of Landfair, but also by the first clause of the transfer of royalties—set out in full above. The second clause thereof is not, on its face, inconsistent with the first. But inquiry into the permits mentioned in the document would necessarily have disclosed that the Rue permit mentioned in the second clause was identical with the Rue permit mentioned in the first. In fact this knowledge on the part of Merrill is not seriously

questioned, if at all, but counsel for Brown contend that the transfer was made within the apparent and actual scope of Rue's authority and was, therefore, binding. It is, of course, true, that a man may know of the interests in property of various parties who are partners or joint adventurers, and yet may rely on the authority of one partner to convey. That point is accordingly important here. Much has been said in the briefs as to whether interveners were joint adventurers or partners. Whether they were the one or the other need not be determined, if it is important, and we may admit, at least for the purpose of this case, that so far as the power of disposition of property is concerned, the rule of law would be the same. Dobbins v. Texas Co., 136 Okl. 40, 275 Pac. 643, 33 C. J. 859. But a material distinction is drawn by the authorities between trading or commercial partnerships and non-trading partnerships. In case of the former, each partner acts as a general agent with implied power to act in the usual way for all the partners within the scope of the partnership business. But, as said in 47 C. J. 828:

"In case of a noncommercial or nontrading partnership, however, the doctrine of general agency and implied liability does not apply, and a partner does not generally possess power to act for and bind the firm and other partners unless such power is specially conferred; or unless it arises by implication from the usages of the business in which the firm is engaged, or from the course of dealing of the particular partnership, in which case the nature of the business, and what is usual and customary therein, will be the measure of each partner's authority. Such power is presumed not to exist, and whether or not it does exist in a particular case is usually a question of fact, to be decided from the partnership articles, the course of firm business, and other facts of each particular case."

The rule is well stated in Snively v. Matheson, 12 Wash. 88, 40 Pac. 628, 50 A. S. R. 877, as follows:

"The general rule is that, so far as a general partnership, or, in other words, a trading or mercantile partnership, is concerned, each partner constitutes the other his agent for the purpose of entering into all contracts for him within the scope of the partnership business. This power rests in the usage of merchants, and grew out of the necessities of commercial business. Therefore the doctrine of implied liability received the sanction of the law, and has for a long time been, and now is, enforced by the courts. But this implied liability does not extend to partners in nontrading partnerships. In such cases the rule announced above is reversed, and the presumption is that one partner has no power to bind the other partners. Hence, before recovery can be obtained upon a contract entered into by one partner in a nontrading partnership against the other partners, it must be affirmatively shown by the party attempting to bind the noncontracting partners, either that the authority to bind was conferred by the articles of incorporation, or that authority had been specially conferred, or that it had been the custom of such partnership to recognize this right to such an extent as would give innocent dealers a right to rely upon the custom. This doctrine was substantially announced so early as 1829, in Dickinson v. Valpy, 10 Barn. & C. 141.''

In Judge v. Braswell, 13 Bush. 67, the partnership's general business was mining, the partnership agreement, however, providing that the business was to embrace the purchase of lands, but that all partners should consent thereto. One of the partners alone bought some land, and the question arose whether that bound all the partners. The court said in part:

"It seems to us that this language is clear and explicit, and that the purchase and sale of lands were within the scope of the partnership. But the articles are equally explicit that no member of the firm and no number of them less than the whole had authority to buy lands for the firm.
"It is contended, however, that the purchase of lands being within the scope of the partnership, each member had implied authority to make purchases for the firm, and that whatever may have been the rights and duties of the partners *inter sese*, and the express limitation upon their power

contained in the written agreement between them, third persons dealing with a single partner, without notice of the private agreement between them, can not be affected by it.

"This is undoubtedly true as to commercial partnerships; but it is a rule of the law merchant which has been adopted into the common law, and rests for its support upon the custom of merchants alone, and has no application to non-commercial partnerships. * * *

"In non-commercial partnerships one who seeks to hold the firm bound upon a contract made by a single member must be able to show either express authority, or that such is the custom and usage of that particular branch of business in which the firm is engaged, or such facts as will warrant the conclusion that the partner has been invested by his co-partners with the requisite authority, the distinction being that in commercial partnerships the extent of a partner's power to bind the firm is a question of law, while the power of a partner in a non-commercial firm to bind his co-partners is a question of fact. * * *

"A partner in such a partnership does not generally possess power to bind the firm, and consequently, the extent of his powers is not fixed by rules of law, but each case is left to be decided upon its particular facts; and in all such cases, in order to make out the liability of the firm, it ought to be made out affirmatively by the plaintiff that the partner had power to make the contract in question."

This rule undoubtedly applies here, unless the facts in the case at bar require the application of a different rule.

These facts do not, it seems, show any "apparent scope of authority." There were but two transactions, and both were connected. About the only thing from which apparent authority might have been gathered was the fact that the permit was in Rue's name, but Merrill knew that others were interested. The apparent scope of authority could not have been gathered from the agreement of joint adventure, because, if the specific terms thereof had been examined, the restriction in the power of each of the co-adventurers would have been known at the same time. So it is necessary only to determine whether the power to transfer was within the *actual* scope of Rue's authority.

Counsel for Brown call attention to Section 4181, Wyo. C. S. 1920, which provides that title to real property in the name of one partner may ordinarily be conveyed by him, unless according to Section 4180 the partner has, to the knowledge of the purchaser, in fact no right to do so. Further, a number of authorities are cited to the effect that where the sale of real estate is within the scope of the business of a partnership, one of the partners has power to convey, and it is claimed that the agreement of December 22, 1921, executed by the interveners, shows that the sale of permits was within the scope of the business of the joint adventurers. That agreement was, as already stated, to the effect that the parties thereto would ''share alike in any moneys, goods or chattels derived therefrom (from the permits), be it for sale, lease, royalties or other revenue derived from the lands herein named.'' This implies that the lands or the permits might be sold or leased. So the authorities relied on by counsel for Brown might apply (though we do not decide that) in determining whether Rue had authority to assign the permit in question to Brown. But we are not concerned with that in the case at bar. No one has undertaken to question that assignment. We are here dealing with a transaction which, so far as the record shows, was entirely distinct and separate from the sale of the permit, namely, with the transfer of one half of the 7-1/2 percent royalty reserved to Rue in the assignment to Brown. The agreement above mentioned, aside from any contemplated sale and lease of the *lands,* provides substantially that the parties would ''share alike in any moneys, royalties or other revenues.'' These refer to the ultimate things to be realized from the permits. Royalty is evidently placed on the same footing as money and other revenue. It could as well be said that the joint adventurers were engaged in selling moneys and other revenues, as that they were engaged in selling royalties. There is nothing in the record to indicate that these royalties were held for sale, and the sale of that, we repeat, was, so far as the record shows, a transaction

distinct from the sale of the permit. Hence, without reference to the rule of limited authority and burden of proof heretofore mentioned, the result would not be changed. As said in Bates, Partnership, Sec. 401:

"Power to Sell. Each partner has, by reason of his agency, power to sell any specific part of the partnership property which is held for the purpose of sale, and make a valid transfer of the entire title of the firm in it.

"Some of the cases and many of the dicta seem to apply this rule to chattels of every kind, whether held by the firm for purposes of sale or not. Thus, a sale or mortgage of a ship by one partner in the firm name has been held good. But I have no doubt but that the power of sale must be confined to those things held for sale, and that the scope of the business does not include the sale of property held for the purposes of the business and to make a profit out of it, and that this only is the true rule."

It follows from what we have said, that the judgment of the lower court in favor of the interveners should be and is affirmed.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.