CRATER et al. v. WALLACE.

No. 30252. June 22, 1943.

Rehearing Denied Sept. 14, 1943.

*140 P. 2d 1018.*

H. L. Smith, of Tulsa, and T. L. Blakemore, of Sapulpa, for plaintiffs in error.

W. R. Wallace and Creekmore Wallace, both of Oklahoma City, for defendant in error.

WELCH, J. This is an appeal from a judgment and decree quieting the title of defendant in error, plaintiff below, to a certain tract of land. For convenience the parties will be referred to herein as plaintiff and defendant as they were in the trial court.

On December 15, 1922, Hiram C. Wilson obtained an administrator's deed for the land involved. His deed was filed for record December 26, 1922, and duly recorded. The title of Wilson covered the surface rights and an undivided one-half of the mineral rights in the land. That is the subject of this action. The legal title remained in Wilson until September, 1929.

Sometime prior to September, 1929, O. A. Mayo and John D. Mayo, doing business as Mayo Furniture Company, obtained a judgment against Wilson in the court of common pleas of Tulsa county, and thereafter filed a transcript of the judgment in the district court of Tulsa county, and a like transcript in the district court of Creek county. The land is in the latter county. An execution was issued directed to the sheriff of Creek county. The land was levied upon and sold under said execution. At the sale C. A. Mayo and John D. Mayo, the judgment creditors, were the purchasers. The sale was confirmed and sheriff's deed was issued on the 11th day of September, 1929. In 1938, C. A. and John D. Mayo, by separate quitclaim deed, each executed and delivered prior to September of that year, conveyed to plaintiff herein, W. R. Wallace. In the meantime, about July 24, 1923, M. C. BreDahl executed an affidavit setting forth in substance that he, L. V. Crater, Hiram C. Wilson, and John G. Ellinghausen were copartners; that said copartnership acquired and owned said land (describing it); that it was held in the name of Hiram C. Wilson, but that whatever interest appeared of record in Hiram C. Wilson was the interest of the partnership, and that affiant claimed an interest in said land, and "makes this affidavit and causes it to be filed of record for the purpose of giving notice to everybody that he claims and has such interest." A copy of the articles of partnership dated January 25, 1922, was attached to the affidavit. The affidavit and copy of articles of partnership were recorded in the office of the county clerk of Creek county. About November 17, 1923, M. C. BreDahl, by quitclaim deed, conveyed his interest in the land to Hiram C. Wilson; about June 8, 1926, Wilson executed an oil and gas lease to L. V. Crater covering the entire tract. About March 23, 1928, L. V. Crater and John G. Ellinghausen executed a quitclaim deed to Hiram C. Wilson covering the east one-half of the 160-acre tract here involved. Wilson died about November or December, 1929.

About September 26, 1938, L. V. Crater and John G. Ellinghausen executed an oil and gas lease to Louis Abraham covering the entire 160-acre tract, running for three years and so long thereafter as oil or gas may be produced from said land.

On January 17, 1939, plaintiff commenced this action against L. V. Crater, John G. Ellinghausen, and Louis Abraham to quiet title and have canceled of record the affidavit of M.. C. BreDahl, above referred to, and the oil and gas lease executed by defendant Crater and Ellinghausen to Louis Abraham.

Plaintiff's claim is that Wilson held legal title to the land when the judgment was obtained against him, and when the land was sold by the sheriff, that the Mayos became the owners of the legal title by virtue of the sheriff's deed, and that plaintiff was an innocent purchaser in good faith for value without notice of any claim of interest in said land, and without knowledge or notice of the alleged partnership.

Defendants Crater and Ellinghausen filed general demurrer to the petition. The demurrer was overruled, whereupon said defendants filed their answer and cross-petition alleging the existence of the partnership between themselves and Wilson; alleging that the land was purchased and paid for by the partnership funds and that title was taken in Wilson's name for convenience; that the

partnership existed and continued down to the death of Wilson, and that the partnership affairs had never been wound up and settled; that at the time of the sale of said land by the sheriff to the Mayos said H. C. Wilson was indebted to his copartners, Crater and Ellinghausen, and they claimed ownership of the land and claimed a lien on the interest of Wilson in the land.

By reply plaintiff filed a general denial and then pleaded the quitclaim deed from BreDahl to Wilson, dated November 17, 1923, as a conveyance of a one-fourth interest in the land; then pleaded the quitclaim deed of Crater and Ellinghausen to Wilson, dated March 23, 1928, as a conveyance of their one-half interest, if any they had, in the east one-half of the quarter section here involved, and then pleaded that by the oil and gas lease executed by Wilson to Crater dated June 8, 1926, Crater was estopped from denying the title of Wilson.

The issues thus joined were tried to the court resulting in a finding of all the issues in favor of plaintiff, and a judgment and decree declaring plaintiff to be the owner of all the surface rights, and an undivided two-fifths, or 64-acre, interest in the mineral rights. The basis of the decree appears to be a finding that plaintiff is an innocent purchaser for value without notice of any claim or right of defendants. This in turn is based upon a finding and conclusion that the affidavit filed by Bre-Dahl was not entitled under the law to be recorded, was not constructive notice to plaintiff, and that plaintiff did not have notice, actual or constructive, of defendants' claim. Defendants contend that under the record plaintiff purchased the property under circumstances that put him on notice of defendants' rights.

It is apparently conceded that the making, filing, and recording of the affidavit and articles of partnership by BreDahl were not sufficient to constitute constructive notice. The statute, 16 O. S. 1941 § 16, makes every conveyance of real property acknowledged or approved, certified and recorded as prescribed by law, constructive notice of the contents thereof to subsequent purchasers, mortgagees, encumbrancers or creditors.

The general rule is that the record of an instrument entitled to be recorded will give constructive notice to persons bound to search for it. But constructive notice being a creature of statute, no record will give constructive notice unless such effect has been given to it by some statutory provision. 46 C. J. 550.

The affidavit here involved was not entitled to be recorded and is not a conveyance of real property within the meaning of 16 O. S. 1941 § 16, supra. The recording thereof of itself could not give constructive notice. Smiley v. Scott et al., 59 Okla. 160, 158 P. 919.

Defendants contend, in effect, that under the record and the provisions of 25 O. S. 1941 § 13, plaintiff must be deemed to have had constructive notice. Said section provides:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself."

The evidence is that one Vickers prepared a "take-off" of the record and reported its status to Tom Wallace, who was looking after the proposed purchase of the land by his brother, W. R. Wallace. It is contended that Vickers and Tom Wallace, being agents of plaintiff, saw and read the record, which put plaintiff on actual notice of circumstances sufficient to put a prudent man upon inquiry as to claim of defendants, and having failed to make inquiry, must be deemed to have had constructive notice of the fact that defendants were claiming an interest in the land.

There is no direct evidence that Vickers or either of the Wallaces actually examined or read the affidavit or the record thereof. It is commonly known among persons dealing with real titles and public records thereof in this state

that a "take-off" is usually compiled from an index of instruments of record, and contains nothing save dates, style or name of the instrument and parties involved, and does not detail the contents of the various instruments recorded. The evidence here shows that the parties and witnesses so understood the term. From that evidence the most that may be inferred as concerns actual knowledge on the part of Vickers or the Wallaces is that they knew that an affidavit of some character concerning the title had been recorded.

Is knowledge of that single fact alone sufficient to create a suspicion in the mind of a person of reasonable prudence that third persons claimed an interest in the land? We have already pointed out that the affidavit was not entitled to record under the statutes. It would therefore hardly seem logical to suggest that plaintiffs would be legally bound to examine a record which the law did not authorize to be made. It is as logical to say that the purchaser might assume that the affidavit contained information in support of the record title rather than in opposition thereto. The facts and circumstances actually known must be sufficiently suggestive of adverse claims to constitute constructive notice under 25 O. S. 1941 § 13, supra. We do not think the evidence here is sufficient to constitute such constructive notice thereunder.

There is nothing in the record to show that the plaintiff or any agent in fact knew the detailed contents of the Bre-Dahl affidavit. The general finding for plaintiff would indicate that the trial court concluded there was no such actual knowledge of the contents of the affidavit, nor of the claims of the defendants, and that the "take-off" which plaintiff saw did not advise as to the detailed contents of the affidavit, and that in fact plaintiff had no actual knowledge of such adverse claims, or knowledge of any facts that would impose on him constructive notice of such claims.

Defendants cite Harris v. Southwest Nat. Bank, 133 Okla. 152, 271 P. 683,

and Streeter v. Anderson, 172 Okla. 113, 43 P. 2d 53, to the effect that a judgment creditor purchasing at his own execution sale acquires no greater interest than that actually owned by the judgment debtor. That rule applies only when the record discloses that the purchaser was not an innocent purchaser for value. This record does not show that the Mayos had actual or constructive notice of defendants' claims at the time of purchase, nor would we be justified in concluding from these facts that they did not part with value. Luschen v. Stanton, 192 Okla. 454, 137 P. 2d 567.

Other points urged by defendants do not require our decision.

Affirmed.

CORN, C. J., GIBSON, V. C. J., and OSBORN, BAYLESS, and DAVISON, JJ., concur. RILEY and HURST, JJ., dissent. ARNOLD, J., not participating.

---

RILEY, J. (dissenting). It is my view that the majority opinion is in error in failure to apply the rule of law provided by statute, 25 O. S. 1941 § 13:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself."

The evidence herein discloses that the agents of W. R. Wallace examined and knew with particularity the caveat and advised Mr. W. R. Wallace of it with the suggestion that despite the claim, now sought to be removed as a cloud on title, the purchase was a good gamble.

The rule is well stated in Corpus Juris that:

"From whatever quarter the information may come, it will be sufficient, if it be so definite as to . . . furnish . . . a palpable . . . guide by means of which he may investigate the matter and ascertain the truth." 46 C. J. 548.

In Daniel v. Tolon, 53 Okla. 666, 157 P. 756, 4 A. L. R. 714, this court commented upon the provisions of the statute, supra, found that it was a general rule independent of the statute, and said that the methods by which notice of prior equities may be given, so as to affect subsequent purchasers, are as various as the means by which knowledge or information of any fact may be communicated or by which persons may be led to believe in the existence of such facts.

In Cooper v. Flesner, 24 Okla. 47, 23 L. R. A. (N. S.) 1180, 103 P. 1016, 20 Ann. Cas. 29, it was said that: .

"One who purchases land with knowledge of such facts as would put a prudent man upon inquiry, which, if prosecuted with ordinary diligence, would lead to actual notice of rights claimed adversely to his vendor, is guilty of bad faith if he neglects to make such inquiry, and is chargeable with the 'actual notice' he would have received."

In the same case, Williamson v. Brown, 15 N. Y. 354, was quoted with approval in the use of these words:

"So, too, notice to an agent is constructive notice to the principal; and it would not in the least avail the latter to show that the agent had neglected to communicate the fact."

Under the rule stated, W. R. Wallace, being advised, was charged with the knowledge of the details of the risk; these details were made a public record. The adverse claim was then known. It constituted a burden on the title from which the purchaser by this action now seeks to be relieved. By the opinion of the majority he is relieved from the burden and cloud upon title to the land, not by the truth or falsehood of that claim, but under the view that the purchaser should be held innocent of any knowledge of the existence of the adverse interest. I am convinced that this is error.

I am authorized to say that Mr. Justice HURST concurs herein.