Robert C. THOMAS, Appellant (Plaintiff below),

v.

Jack A. ROTH et al., Defendants, and also all other persons unknown claiming any right, title, estate, lien or interest in the property described in Plaintiff's complaint adverse to Plaintiff's ownership, or any cloud upon Plaintiff's title hereto, Appellees (Defendants below).

No. 3178.

Supreme Court of Wyoming.

Nov. 22, 1963.

Clayton H. Morrison, Aurora, Colo., and Maurer & Garst, Douglas, for appellant.

Houston G. Williams, Casper, and Charles M. Stoddard, of Gorsuch, Kirgis, Campbell, Walter & Grover, Denver, Colo., for appellees.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

The controversy in this matter stems from a quiet title suit brought by Robert C. Thomas in connection with the ownership of three oil and gas leases issued by the United States on lands in Converse County, Wyoming.

The complaint alleges the leases were acquired through the efforts of C. C. Thomas for the account of Robert C. Thomas and paid for with funds belonging to the latter. It also alleges that Jack A. Roth, one of the defendants and an employee of C. C. Thomas, caused two of the leases to be assigned to himself without authority therefor; and that Lewis R. Dick, another defendant and also an employee of C. C. Thomas, caused the other lease to be assigned to himself without authority therefor.

One of the Roth leases and the Dick lease were thereafter purchased by Charles L. Campbell. He took assignments from Roth and Dick and afterwards reassigned both leases to parties by the name of Goldston.

Campbell and the Goldstons defended the quiet title suit on the ground that Campbell had no notice, actual or constructive, of any claim of interest by plaintiff-Thomas, at the time of Campbell's purchase; and that both Campbell and his assignees, the Goldstons, acquired their two leases as bona fide purchasers for value without notice, actual or constructive, of any claim therein by plaintiff. These defendants asked that title to their leases be quieted in the Goldstons.

A motion was made by Campbell and the Goldstons for a separate trial, pursuant to Rule 42(b), W.R.C.P., on the issue as to whether they had acquired the two leases purchased by them as bona fide purchasers for value, without notice of any claim on the part of plaintiff; also on the issue of laches, which they had pleaded as an affirmative defense. Both Roth and Dick, in a separate motion, made the same request.

The motion for separate trial was granted and the court proceeded to trial on the issues specified. Findings were generally for Campbell and the Goldstons, and judgment was entered quieting title to the two leases in question, in the Goldstons, free from the claims of plaintiff-Thomas. The court specifically found there was no just reason for delaying the entry of this judgment.

On appeal to our court, plaintiff claims (1) abuse of discretion in the granting of a separate trial; and (2) that the judgment was erroneous.

### Separate Trial

Rule 42(b), which was followed in ordering a separate trial, provides:

"The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counter-claim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

The objection now advanced by appellant-Thomas to a separate trial is based upon an assertion that the complaint alleged Roth and Dick unlawfully appropriated and "stole" the titles to the leases in question. It is suggested the matter as to whether Campbell and the Goldstons were purchasers for value without notice would be moot, if no legal title was acquired in Roth and Dick.

We fail to find anything in the record to indicate that plaintiff alleged or went to trial on the theory that these leases had been stolen by Roth and Dick. However,

we will not belabor the point, for there is a more relevant reason for saying the objection with respect to a separate trial is not well made.

One of the issues tried was whether Campbell and the Goldstons were in fact bona fide purchasers for value without notice. This issue necessarily included the question as to whether Campbell acquired a legal title from Roth and a legal title from Dick, because the doctrine of bona fide purchaser applies only to the purchaser of the legal title. United States v. Certain Parcels of Land Situate in San Bernardino County, D.C.Cal., 85 F.Supp. 986, 1008; Hodges v. Beardsley, 269 Ala. 280, 112 So.2d 482, 484; Seguin v. Maloney-Chambers Lumber Co., 198 Or. 272, 253 P.2d 252, 258, 35 A.L.R.2d 1412, rehearing denied 256 P.2d 514, 35 A.L.R.2d 1412; Mosley v. Magnolia Petroleum Co., 45 N.M. 230, 114 P.2d 740, 753.

Hence, if no legal title had been acquired by Roth or by Dick, none could have been conveyed to Campbell. That issue then was very much before the court, and indeed it would appear from the record that plaintiff had a full hearing thereon. At least, no suggestion is made to us that plaintiff was precluded from introducing evidence and being heard on the matter of the titles acquired by Roth and Dick.

We cannot quarrel with the statement of counsel for plaintiff-Thomas that a purchaser from a person without title cannot claim rights as a bona fide purchaser. See Rue v. Merrill, 42 Wyo. 497, 297 P. 375, 377; and Rue v. Merrill, 42 Wyo. 511, 297 P. 379, 384. But we do not follow counsel's insistence that the titles of Roth and Dick were void. The evidence shows otherwise, and as we have already said that matter was squarely before the court for determination.

We review this evidence briefly. A purchase of the leases was made from lessees of the United States, and assignments were taken in the names of Roth and Dick. The plaintiff, Robert C. Thomas, claims they were acquired through the efforts of C. C. Thomas who was his agent. The office of C. C. Thomas, with a letter signed by his secretary, sent the assignments to the Federal Bureau of Land Management at Cheyenne for approval.

Seven months later the first Thomas claim of interest was made in letters which C. C. Thomas sent to the Bureau of Land Management. These letters would indicate he was recognizing and standing upon the assignments to Roth and Dick, there being no claim that such assignments were void. Instead, his claim was that he (not the plaintiff) was the owner of a 50-percent interest in each lease.

The first claim of interest on the part of plaintiff was made after more than another 27 months, in letters which plaintiff sent to the Federal land office. In these letters the writer specifically claimed the "equitable interest" of the leases was in him. Again there was no dispute of the legal title nor claim that the assignments to Roth and Dick were void. Indeed, there was in fact a recognition of a half interest to them.

Affidavits were also filed with the Federal land office and with the county clerk of Converse County. They set out that plaintiff had a working agreement with Roth and Dick, under which plaintiff would have an interest in the leases along with Roth and Dick. We see in these affidavits no claim of legal title on the part of plaintiff, and they can only be construed as a claim of an equitable interest.

Nowhere in the record do we find a claim on the part of plaintiff-Thomas that legal title, because of void assignments, remained in the assignors of Roth and Dick. If he does so claim, the court was amply justified by the evidence in finding otherwise, and in holding legal title to be in Roth and Dick at the time of their assignments to Campbell. It is possible, but a matter which we are not deciding, that plaintiff had equities in the leases, but he had no semblance of a legal title.

For these reasons, plaintiff-Thomas fails to convince us that the question as to

whether the legal title was acquired in Roth and Dick is still to be litigated, and that the court for this reason abused its discretion in granting a separate trial.

Perhaps we should say in passing, the matter pertaining to the third lease mentioned above, which was not purchased by Campbell and the Goldstons, is still to be litigated. Not only that, but we notice from the record that other litigation is also pending between the Thomases on one side and Roth and Dick on the other. Apparently many other leases, covering many thousands of acres, are involved. Also, it would appear complicated accountings between the parties will be involved relating to numerous transactions and large sums of money.

█ With such a situation, involving many transactions which do not concern Campbell or the Goldstons, it would appear this case is exactly the kind of case in which Rule 42(b) should be invoked.

### Was Judgment Erroneous?

We have already reviewed the evidence enough to make it clear there was a legal title in Roth and a legal title in Dick when they sold and conveyed the respective leases to Campbell. Also, it is undisputed that Campbell paid a substantial sum of money for each lease, thereby parting with a consideration of value. His good faith is not challenged.

█ A bona fide purchaser is one who pays a valuable consideration, has no notice of outstanding rights of others, and who acts in good faith. Rosenquist v. Harris, D.C.N.D., 138 F.Supp. 21, 27; Glaser v. Holdorf, 56 Wash.2d 204, 352 P.2d 212, 215. See also Snyder v. Ryan, 39 Wyo. 266, 270 P. 1072, 1074, rehearing denied 275 P. 127; Newman v. Coker, Tex.Civ.App., 310 S.W. 2d 354, 361; and Johnson v. Stull, Mo., 303 S.W.2d 110, 118.

█ The only question presented for our consideration in determining whether Campbell was a bona fide purchaser is the matter of notice. In that regard, it is fair to say the testimony offered on behalf of Campbell and the Goldstons was conclusively to the effect that Campbell knew nothing of plaintiff's claim of interest, prior to the time he received assignments from Roth and Dick and paid the consideration therefor.

The last act in connection with each transaction was payment of the consideration, and that was done June 19, 1961. Plaintiff argues that letters from C. C. Thomas to the Bureau of Land Management, in which C. C. Thomas claimed a half interest in each lease, were received October 6, 1959; that since Campbell checked the records of the land office, or had them checked, either he or his checking agent must have seen the C. C. Thomas letters.

There is no testimony to the effect that Campbell or his checking agent did see these letters. On the contrary, the testimony of Campbell indicates he had the records of the Bureau of Land Management checked June 2, 1961 and again June 16, 1961, and that the letters of C. C. Thomas were not found in the files at either time. The letters from plaintiff, Robert C. Thomas, were not received in the land office until June 23, 1961, which was after Campbell's purchase had been completed.

On the basis of this evidence the court was justified, if indeed not duty bound, in finding Campbell knew nothing of plaintiff's claim of interest at the time of his purchase.

This brings us to a consideration of the matter as to whether Campbell was chargeable with constructive notice of plaintiff's claims at the time of his purchase.

There is no statute applicable in this state which would make a letter to the Bureau of Land Management constructive notice of the claims therein stated, and as pointed out by our court in Dame v. Mileski, 80 Wyo. 156, 340 P.2d 205, 208; and again in Torgeson v. Connelly, Wyo., 348 P.2d 63, 66, constructive notice by recording is a matter entirely dependent upon statute. In both of those cases, this court held docu-

ments of whatever nature filed in the Bureau of Land Management do not constitute constructive notice.

We said above that affidavits were filed by plaintiff-Thomas in the office of the Bureau of Land Management and in the office of the county clerk of Converse County. The filings with the land office were June 27, 1961. They may be disregarded because that was after Campbell's purchase had been completed and payment made. However, the filing of these affidavits with the county clerk was on June 15, 1961, prior to the time of Campbell's payment for the leases on June 19, 1961.

We must therefore consider whether the affidavits were entitled to be recorded and whether they constituted constructive notice. Counsel for Campbell and the Goldstons say the affidavits were not notice because they were not acknowledged, and even if acknowledged are not in any event instruments entitled to record.

Although these affidavits purport to be signed by Robert C. Thomas and to have been "subscribed and sworn to" before a notary public, they do not have certificates of acknowledgment as required by our statutes for instruments of conveyance. See §§ 34-13 and 34-50, W.S.1957.

It follows from this that the affidavits fail to qualify for the treatment afforded in § 34-18, W.S.1957, which provides a certificate of acknowledgment of any deed, mortgage "or conveyance," as provided in this act, shall entitle the instrument to be recorded in the register of deeds (county clerk) in the county where the land lies.

Chief Justice Parker, in the Torgeson v. Connelly case referred to above, at 348 P. 2d 67, quoted from Annotation 59 A.L.R. 2d 1299, 1302, to this effect, if an instrument required for recordation to be acknowledged is without an acknowledgment and is admitted to record, the recordation does not afford constructive notice of the existence and contents of the instrument. For the Wyoming rule in that regard, the Chief Justice cited Condict v. Ryan, Wyo., 79 Wyo. 211, 333 P.2d 684, 686, (rehearing denied 79 Wyo. 231, 335 P.2d 792); and North American Uranium, Inc. v. Johnston, 77 Wyo. 332, 316 P.2d 325, 328.

■ Even if the affidavits had been sufficiently acknowledged, they were not eligible for recordation, because an affidavit is not a "deed, mortgage or conveyance" entitled to be recorded under § 34-18. The recording of an instrument, which is not a proper subject of recordation under applicable statutes, does not operate to give constructive notice of the contents of the instrument to prospective purchasers or encumbrancers of the property. Annotation 3 A.L.R.2d 577, 578; Crater v. Wallace, 193 Okl. 32, 140 P.2d 1018, 1020; Smalley v. Octagon Oil Co., Tex.Civ.App., 82 S.W.2d 1049, 1052 (error dismissed).

By filing his affidavits of ownership, it appears plaintiff-Thomas sought to do what he could more effectively have done by commencing suit and filing a notice of lis pendens. In any event, as was mentioned in the Torgeson case, the legislature makes the laws pertaining to recording and constructive notice which flows therefrom, and the courts have no alternative but to apply existing statutory provisions to the cases before them.

### Concluding Matters

In view of our conclusion that Campbell and the Goldstons were properly held to be good-faith purchasers, it is unnecessary for us to consider their defense of laches. We have carefully considered, however, a claim made by plaintiff that he was prejudiced, because the court denied a motion for an order permitting plaintiff to take the depositions and inspect the documents of Roth and Dick.

We think it unnecessary to discuss this claim in detail, but we will say it seems to us the court was abundantly fair and generous to all parties, in the time allowed for depositions and discovery procedures to be completed.

■ Moreover, appellant has not made it clear to us that a proper notice to take

depositions, as required by Rule 30(a), W. R.C.P., was served, nor that notice of his motion was timely served as required by Rule 6, W.R.C.P. It is not error to deny a motion for an order to take depositions, since the rules provide the method for a party to obtain an examination of other persons, on service of a proper notice, without court order. See Sokolin v. Estes, 76 U.S.App.D.C. 357, 131 F.2d 351; and Von Witte v. American Elite, Inc., D.C.N.Y., 20 F.R.D. 221, 222.

There is nothing in the record before us to indicate that plaintiff could not, by complying with the rules, have taken depositions and obtained an order for production of documents.

The judgment is affirmed.