Hon. R. C. WATTS, Associate Justice and Chief Justice.

Hon. THOS. P. COTHRAN, Associate Justice

Hon. J. HARDIN MARION, Associate Justice

Hon. EUGENE S. BLEASE, Associate Justice

Hon. JOHN G. STABLER, Associate Justice

Hon. JESSE F. CARTER, Associate Justice

## 12251

BURKE v. BURKE ET AL.

(139 S. E., 209)

1. DEEDS—DELIVERY, TO BE EFFECTIVE, MUST BE MADE WITH INTENT TO VEST TITLE IN GRANTEE.—Delivery of a deed, to be effective, must be with intent to vest title in grantee and amount to more then mere manual delivery.

2. DEEDS—EFFECTIVE DELIVERY OF DEED HELD NOT ESTABLISHED NOTWITHSTANDING MANUAL DELIVERY AND RECORDING YEARS LATER.— Manual delivery of deed and presumption arising from recording years later *held* insufficient to establish an effective delivery, in view of testimony of grantee and his wife and grantors' continued public assertion in ownership and control and successive mortgaging of property.

NOTE: As to what constitutes delivery of deed, see annotation in 16 L. R. A. (N. S.), 944; 8 R. C. L., 984; 2 R. C. L. Supp., 701; 4 R. C. L. Supp., 585; 5 R. C. L. Supp., 490.

Intention of parties essential element of delivery of deed, see 8 R. C. L., 970; 2 R. C. L. Supp., 700; 4 R. C. L. Supp., 584.

On presumption of delivery from recordation of deed, see annotation in 38 L. R. A. (N. S.), 944; 8 R. C. L., 1004; 2 R. C. L. Supp., 704; 4 R. C. L. Supp., 586; 5 R. C. L. Supp., 491; 6 R. C. L. Supp., 533.

3. DEEDS—PRESUMPTION OF DELIVERY FROM RECORDING OF DEED IS
   OVERCOME BY DIRECT TESTIMONY CLEARLY ESTABLISHING INCONSIST-
   ENT CIRCUMSTANCES.—The *prima facie* presumption of delivery
   arising from recording of deed cannot stand in the face of incon-
   sistent circumstances clearly established by direct testimony.

Before SEASE, J., Spartanburg, March, 1927. Reversed
and remanded.

Suit by Sarah Burke against Taylor Burke and others.
From the decree rendered, plaintiff and named defendant
both appeal.

*Messrs. S. T. Lanham, L. K. Jennings and L. G.
Southard,* for appellants, cite: *Instrument in form of deed,
executed by grantor to take effect after his death, which re-
mains in his control, ineffectual to pass title for want of
delivery:* 18 C. J., 208; 85 S. C., 383; 83 S. C., 329; 137
A. S. R., 815. *"Delivery":* 23 S. C., 91; 119 S. C., 134;
15 S. C. L., 200; 14 S. C. Eq., 256; 31 S. C. Eq., 219; 19
S. C., 216; 117 S. C., 24; 52 S. C., 474; 24 S. C., 596; 9
Rich., 303; 31 S. C. L., 532; 82 S. C., 264; 116 S. C., 272;
89 S. C., 268; 18 C. J., 205. *Cannot inherit from collateral
relatives:* 116 S. C., 235. *Master expected to pass upon
credibility of witnesses; Circuit Judge should be guided by
findings:* 21 C. J., 613; 55 N. E., 238; 11 S. C. Eq., 414.
*In equity may reverse findings of Circuit Judge when against
preponderance of evidence:* 55 S. C., 198; 61 S. C., 566; 60
S. C., 426; 64 S. C., 27. *Cases distinguished:* 99 S. C.,
276; Ann. Cas., 1916-E, 911; 124 S. C., 160; 126 S. C.,
469.

*Messrs. R. A. Hannon,* and *Bomar & Osborne* and *Fred
D. Hamrick,* for respondent Taylor Burke, cite: *Distinction
between instruments intended to operate as wills or deeds:*
24 S. C., 228; 101 S. C., 351. *"Delivery":* 23 S. C., 91;
117 S. C., 24; 96 S. C., 1. *Rights of illegitimate children
to inherit from each other:* Sec. 5334, Code.

*Mr. F. Gentry Harris,* for infant defendants.

August 23, 1927.

The opinion of the Court was delivered by MR. ACTING
JUSTICE WHITING.

In the printed argument of attorneys for plaintiff-appellant, it is very properly conceded that the seven exceptions taken by this appellant to the decree of the Circuit Judge can be answered if a single issue is decided: Was the paper which is under question a duly delivered deed?

The controversy is within the family circle over 52½ acres of farming land situated in Spartanburg County, the title of which was acquired by Mayberry L. Burke prior to his marriage. He married the plaintiff September 2, 1909, and thereafter continued to live on the same property and to exercise all rights of ownership until his death. In June, 1923, he died intestate and without issue, being survived by his widow, Sarah Burke, and a half-brother, Taylor Burke. After his death claim to the property was made by Taylor Burke under a paper purporting to be a deed made by Mayberry Burke; this paper having been offered for record and duly recorded February 1, 1922. The alleged deed bears date of August 27, 1909, or six days prior to the date of Mayberry Burke's marriage to plaintiff. Except for the record of this deed in February, 1922, it does not appear that Taylor Burke ever asserted any claim of ownership to the property until after Mayberry Burke's death. The consideration expressed is "love and affection." In the habendum and warranty clauses the terms are contained: "Unto the said Taylor Burke his lifetime, then his heirs and assigns." There is, however, a preamble to the deed in which appears the following:

"I Mayberry L. Burke, make this deed to Taylor Burke his lifetime if he should live longer than I do I reserve the rite to hold this land as long as I live and after my death to Taylor Burke as long as he lives only then I want this land entailed to Taylor Burke's children."

This action has been brought by the widow, Sarah Burke, to cancel the deed of record and obtain her distributive share in her husband's property. Taylor Burke is the real defendant in the action, with his children also joined as defendants on account of the interests in remainder that might

arise in their favor under the somewhat confused phraseology of the deed. Parties, attorneys, Master, and Circuit Judge are all of Spartanburg County. The Master and Circuit Judge have not agreed in their conclusions; and the bitterness of family strife features the proceedings throughout and colors the testimony given upon the trial of the cause. The decree of the Circuit Judge reversing the Master decides that the deed was vitalized by delivery and construes it as creating a life estate in Taylor Burke with remainder over to his children.

Questions raised in the argument of the appeal which may be eliminated from further discussion as not having important bearing upon the determination of the appeal are: (1) The date of the alleged deed. Whether executed on August 27, 1009, or several years later as was contended by appellant, the relation of the parties is not materially altered. The conditions pointed out by appellant's attorneys that indicate a date of execution years after the plaintiff's marriage to Mayberry Burke tend to reflect upon the credibility of the testimony relied upon by defendant to establish the delivery of the deed; but more specific consideration becomes unnecessary as we shall base our conclusion upon other grounds. (2) The suggested claim that Taylor Burke, as an illegitimate half-brother of Mayberry Burke, would not be entitled even to a distributive share in the property. Under the Act of 1920 (Section 5334, Civ. Code 1922), it it specifically provided that "illegitimate children of the same mother shall have the same right to inherit from each other that they would had they been legitimate." (3) The appeal and exceptions taken by the defendant Taylor Burke which question the construction placed upon the deed by the Circuit Judge. Consideration of these exceptions becomes unnecessary, as we shall hold that the deed executed by Mayberry Burke was never given vitality by delivery.

In arriving at the decision that the deed to Taylor Burke had been delivered, the Circuit Judge commented that there were circumstances tending to support the contrary position,

but that in his view of the case by far the greater preponderance of the testimony suported the defendant's contention that it was delivered. The intimate acquaintance of the Circuit Judge with local conditions and people and the detailed analysis of facts and circumstances upon which his decision is predicated cannot lightly be disregarded. Yet, in the matter of judgment as to the weight of the testimony, the Master, who reached the opposite conclusion, had the advantage of seeing the witnesses and hearing the testimony that they gave. The difficulty of sifting out the truth from a mass of conflicting statements in respect to which Master and Circuit Judge have differed inclined the writer of this opinion, at first, to resort to the solution indicated in *Huntley v. Welsh,* 61 S. C., 566, 568; 39 S. E., 767, 768, where the Supreme Court remanded the cause for a jury trial of issues of fact. In that case Chief Justice McIver said:

"It must be regarded now, since the case of *Finley v. Cartwright,* 55 S. C., 198; 33 S. E., 359, as the settled rule that in an appeal in a case in chancery * * * this Court has jurisdiction to review any finding of fact by the Circuit Court and reverse such finding if the finding of the Circuit Court is against the preponderance of the testimony. Whether this is so in the present case depends largely upon the credibility of the witnesses—a question *peculiarly appropriate to a jury*—which we are unable to determine satisfactorily without the aid of a jury; and *therefore we have concluded to remand the case to the Circuit Court, in order that issues may be framed and submitted to a jury.*" (Italics ours.)

The above-cited case of *Huntley v. Welsh* is clearly based, however, on the premise that the proper determination of the appeal depended upon the credibility of the witnesses—a question which the appellate Court was unable to determine satisfactorily. Is this true of the present case; or are there features that relieve from the necessity of depending upon the usual considerations governing the weight of testimony? Disregarding entirely the statements of plaintiff's

witnesses and considering solely the testimony given by Taylor Burke and his wife, there is still left for consideration the application of the test which has on several occasions been approved by this Court: Was the delivery of the deed intended to be complete so as to make an absolute conveyance of the property in pursuance of its terms?

1, 2     1. As a basis of comparison with the situation presented in this appeal we may instance the case of *Shute v. Shute,* 82 S. C., 264; 64 S. E., 145, in which the decree of Circuit Judge, later Associate Justice, George W. Gage was adopted as the decision of the Supreme Court. Circumstances there relied upon to show delivery of the deed were the recording of such deed, the return of the property in the names of the sons who claimed title as grantees under the recorded deed, the payment of taxes by the sons, and the execution of a mortgage by the sons. Specific consideration was given these circumstances in the decree of the Circuit Judge. It was held, however, that they did not establish delivery because, as was stated by Judge Gage: "The fundamental issue is, did the old man mean to deprive himself of his property and give it to his boys?" Similarly, in the case of *Morgan v. Morgan,* 116 S. C., 272; 108 S. E., 110, in a decree which was adopted as the decision of the Supreme Court, Circuit Judge McIver said: "Delivery is a matter of intention; it cannot be in the absence of it." The test of the grantor's intention to deliver, as applied by Judge McIver, was stated: "Did he intend to part with title to his land, *and deprive himself of his sovereignty over it as owner?*" (Italics ours.) An abundance of additional authority may be cited to similar effect: *Arthur v. Anderson,* 9 S. C., 234, 249; *Fraser v. Davie,* 11 S. C., 56, 70; *Garrigan v. Byrd,* 23 S. C., 89, 91; *Johnson v. Johnson,* 44 S. C., 372; 22 S. E., 419; *Merck v. Merck,* 83 S. C., 341; 65 S. E., 347; 187 Am. St. Rep., 815; *Rountree v. Rountree,* 85 S. C., 386; 67 S. E., 471; *Harrison v. Dunlap,* 96 S. C., 392; 80 S. E., 619.

In the early case of *Babb v. Harrison,* 9 Rich. Eq., 111, 115 (70 Am. Dec., 203), Chancellor Wardlaw said:

"* * * A deed must take effect on its execution, and immediately pass the estate or interest given. * * * If the interests created do not arise until the death of the donor or some other future time, the instrument cannot be a deed, although it may be so denominated by the maker, may have express words of immediate grant, may have sufficient consideration to suport a grant, and may be formally delivered."

It was said by the eminent Justice McIver in *Coln v. Coln,* 24 S. C., 596, 597:

"Delivery is essential to the validity of a deed, and the mere fact of manual delivery, in the absence of intention by that act to pass the title, will not be sufficient. In the absence of evidence to the contrary, intention to deliver may be inferred from mere manual delivery."

A substantial reiteration of the same principle is found in the recent case of *Powers v. Rawls,* 119 S. C., at page 153; 112 S. E., 85, in which Mr. Justice Marion said:

"Intention has been called the essence of delivery. 8 R. C. L., p. 978. Delivery of a deed includes, not only an act by which the grantor evinces a purpose to part with the control of the instrument, but a concurring intent thereby to vest the title in the grantee."

In the recent elaborate edition of Thompson on Real Property, §§ 3871, 3872 (Vol. 4, pp. 947, 950), the rule is declared:

"A deed must take effect upon its execution if at all. It must pass a present interest to the grantee, though his right to enter into possession may be deferred to a future time. * * * If the grantor reserves control of the instrument, and it is subject during his life to revocation, no present estate passes to the grantee, and the deed is invalid for want of delivery."

So, also, in 8 R. C. L., 984, in discussing the question as to what constitutes delivery, it was said:

2—S. C. 141

"But the rule cannot be extended so as to make a mere handing to the grantee a delivery, where the circumstances show no delivery is intended, * * * or where the deed is placed in the hands of a grantee with the understanding that it shall be returned to the grantor if he should call for it, but if he should not it is to be placed on record on his death, the delivery in such case being incomplete."

2. In answer to the question why Taylor Burke did not have the deed recorded, Mrs. Taylor Burke gave the explanation:

"A. If he had had that papers recorded, if M. L. ever wanted to mortgage it to any one they would have searched the records and M. L. couldn't have mortgaged it. He wanted to keep it off record simply because Mayberry could use it during his lifetime, if he wanted to. He wanted it so that Mayberry could use it during his lifetime, and if he got dissatisfied with it, he could come and ask for the papers back and get them."

Taylor Burke, under cross examination as to his reasons for keeping the deed off the record, testified:

"* * * Simply because he was to do what he pleased with it his lifetime. * * * If I outlived him, I had a chance to put it on record, and if he outlived me, it was his."

On further examination by his own attorney Taylor Burke stated his understanding concerning the deed:

"It was that if I outlived him, then I could put it on record and, if he outlived me, then under the deed he would get the land."

The additional circumstance is also brought out in the testimony of Taylor Burke that the chest in his aunt's house, where it was claimed that this deed had remained for years after its execution, was used as a family storing place for valuable papers; Mayberry Burke as well as himself keeping papers in the chest and having access to it. A further circumstance tending to show that Mayberry did not consider the deed as having passed from his control appears in the

inquiries that he made after he had missed the deed from the chest where it had been kept.

3. The testimony given by Taylor Burke and also testimony of similar character given by his wife shows that the inquiries made by Mayberry Burke after he had found that the deed had been taken from its customary place, were met by their own evasive and misleading answers, and that soon afterwards Mrs. Taylor Burke, acting under instructions from her husband, filed the deed for record. In explanation of her evasive answers to the inquiries of Mayberry Burke concerning the deed, the statement was made by Mrs. Taylor Burke:

"I didn't want him to know that I had it * * * after Taylor gave me the paper and told me to hide it and put it away. I was afraid he would get mad."

The *prima facie* presumption of delivery which is raised by the record of the deed cannot stand up when circumstances inconsistent with such presumption are clearly established by direct testimony. The part of the record which is made by the testimony of Taylor Burke and his wife cannot, it seems to us, be reconciled with that unqualified delivery of the deed which would be necessary to make it effective as a conveyance of title to the property. For the conveyance to have become complete, it would have been necessary that Mayberry Burke should have retained no further interest in the land in question except the life estate therein which he had reserved to himself under his deed. This, as we have seen, was not the situation. The right to mortgage the property, which was recognized by Taylor Burke and which was made use of by Mayberry Burke to the extent of giving seven mortgages during the ten-year period from 1911 to 1921, amounted, in itself, to a continuing public assertion of ownership and control that would be wholly incompatible with the delivery of a deed under which only a life interest in the land had been retained by the grantor.

It is therefore the judgment of the Court that the judgment of the Circuit Court be reversed and that the cause be remanded to that Court for such further proceedings as may be necessary to carry into effect the views herein expressed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES COTHRAN, STABLER and CARTER concur.

MR. JUSTICE BLEASE did not participate.