(No. 27899.—

HELEN BROZINA, Appellant, *vs.* JOHN WANDA, Appellee.

*Opinion filed May 16, 1944.*

CASIMIR R. WACHOWSKI, and MICHAEL SIEMANSKI, (FRANCIS J. BENDA, of counsel,) all of Chicago, for appellant.

MARTIN M. GROSS, and B. PELECHOWICZ, both of Chicago, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff, Helen Brozina, also known as Helen Wanda, on August 11, 1942, filed a complaint for divorce in the superior court of Cook county against defendant, John Wanda, charging habitual drunkenness. A hearing on her motion for allowance of temporary alimony and attorney's fees disclosed that the parties were living together on May 25, 1942, the alleged date of separation. The complaint was subsequently dismissed. October 3, 1942, the present proceeding was instituted in the circuit court of Cook county when plaintiff filed her complaint seeking separate maintenance upon the ground of extreme and repeated cruelty, alleging September 25, 1942, as the day of separation. April 27, 1943, her amended complaint was filed, this time for divorce, charging cruelty. In his sworn an-

swers to all three of plaintiff's complaints, defendant admitted the marriage, but denied all other material allegations, so far as relevant to causes for divorce and separate maintenance. June 1, 1943, plaintiff announced in open court that intensive investigation revealed she and defendant were not legally married. In her second amended complaint,—her fourth pleading—filed June 10, 1943, plaintiff, after stating her age to be fifty-two, alleged her illiteracy and arrival in this country from Austria-Hungary at the age of fourteen; her marriage, in 1907, to George Brozina, when she was sixteen; the birth of six children, three of whom still survive, and her acquisition of sole ownership of an improved parcel of real estate upon her husband's death in 1928. The property, consisting of a modest two-story frame building located in Chicago, was encumbered with a mortgage indebtedness of $3000, reduced by plaintiff to $2000, shortly after her husband's death. Thereafter, in April, 1942, while she was still living with defendant, the debt was further reduced by a payment of $1000. In substance, plaintiff's fourth pleading further alleged that although defendant suggested marriage he "did not intend to marry plaintiff, but designed to avail himself of her services and her property without the benefit of matrimony;" that on June 2, 1930, she, together with her uncle and aunt, and defendant, repaired to the office of the county clerk, where a marriage license was obtained; that, in reliance upon defendant's false representation they were married, she, on June 7, 1930, permitted him and three of his children to take up residence in an apartment in the building owned and occupied by her with her four minor children, and that, later, two more of defendant's children, and a grandchild, also occupied the same apartment. Next is alleged the conveyance of title on November 4, 1937, to defendant and herself in joint tenancy, upon the suggestion of the former and his representations that the conveyance "ought to be so made

since they were husband and wife" to avoid the cost of probate in the event of her death; that the deed to defendant was to have no effect unless she died, and that she, plaintiff, was to remain the sole and exclusive owner of the property during her lifetime. Finally, it is charged that she did not learn she was not married to defendant until May, 1943, when she was so advised by her attorneys. Plaintiff asked that the deed to defendant be set aside, that he be required to reconvey, and, in the event of his refusal, a commissioner be appointed for this purpose.

Answering, defendant admitted the residence of himself and children with plaintiff. He denied all the remaining material allegations of her last complaint. Defendant also filed a counterclaim, in which he sought a lien upon the premises for moneys allegedly advanced and expended by him from June 2, 1930, until September 25, 1942, in the aggregate sum of $23,024.99, for the support of plaintiff and her children, and reimbursement for payments on the mortgage indebtedness, taxes, repairs and maintenance. No hearing appears to have been had upon plaintiff's motion to strike the counterclaim.

November 3, 1943, upon the conclusion of the final hearing, the chancellor found there was a failure to establish a case entitling either party to relief, and, further, that the doctrine of unclean hands was applicable. Accordingly, a decree was entered, dismissing the complaint and the counterclaim for the want of equity. Plaintiff appeals and defendant has prosecuted a cross appeal. A freehold is necessarily involved.

Defendant was fifty-nine years of age at the time of the hearing before the chancellor. He attended school in Austria-Hungary through the sixth or seventh grade. A previous marriage contracted by him terminated in divorce. For the past nineteen years he had been employed by a railroad company as a car inspector. It is conceded that from June 7, 1930, when he and his children moved into

plaintiff's home, until shortly prior to September 25, 1942, when the parties separated, he turned over to plaintiff his wages, after deducting personal expenses, and that, during this period, he made extensive repairs to the building, including the addition of new rooms and the improvement of the foundation and exterior. Plaintiff, on the other hand, performed the household duties pertaining to the well-being of her family, augmented as described.

The issues upon the hearing were limited to a determination of the merits of plaintiff's allegations (1) with respect to being misled by defendant's misrepresentations that they were truly married on June 2, 1930, and (2) incident to the conveyance in joint tenancy on November 4, 1937. Defendant was called as a witness under section 60 of the Civil Practice Act. (Ill. Rev. Stat. 1943, chap. 110, par. 184.) It was stipulated that no marriage ceremony was performed. The testimony on the marital issue is in substantial accord, namely, that both believed themselves to be legally married. The only conflict apparent is that each accused the other of misrepresenting a state of marriage.

With respect to the conveyance, defendant testified to a conversation with plaintiff immediately prior to November 4, 1937, in which she stated that, in recognition of his services in repairing and maintaining the building, he was entitled to an interest in the property equal to her's. Defendant also testified that both prior to and after the day named, he and plaintiff managed the premises. Plaintiff, in her own behalf, denied making any statement to defendant that she would transfer the property to him because of his industry. She testified that in March, July and November of 1937, defendant urged a deed to both to facilitate transfer to him upon her death, and that, after the conveyance in joint tenancy, he informed her he would be sole owner if she should die and, on the other hand, if he died first the property would belong to her. According to plaintiff, she did not continue to operate the property

after the conveyance, adding that defendant then collected the rents. George Brozina, her son, related a conversation between defendant and his mother, claimed to have been overheard by him in July, 1937, in which defendant insisted upon a conveyance in joint tenancy, and, at the same time, reassured plaintiff, stating she would not have to worry about the property—that she would be the "boss" until her death.

Defendant's failure to advance any argument to support his cross errors, together with the concession in his brief that substantial justice has been done by the decree, constitutes an abandonment of his cross appeal. The principal question presented for decision is whether the evidence adduced in plaintiff's behalf was sufficient to establish a *prima facie* case for equitable relief. She contends that the record clearly evinces her intention, at the time of the conveyance, to retain ownership and control; that the transfer was to be effective only upon her death, and that this was understandingly acquiesced in by defendant. From the premise that no present interest in the property was conveyed to defendant, plaintiff urges that, in the absence of countervailing proof, the chancellor should have ruled, as a matter of law, that the transfer was void as an attempted testamentary disposition. The contention and argument are not sustained by the evidence. Disregarding entirely the testimony of defendant, and giving to plaintiff the benefit of all reasonable inferences, the only conclusion deducible from the evidence is that she voluntarily caused title to be placed in joint tenancy with a man she had long supposed was her husband. His industry in repairing and improving the property, corroborated by her own testimony, was, in itself, sufficient consideration upon which to base such a conveyance, even among strangers. The execution and recording of a deed absolute in form, and containing no reservations, is conceded. By this conveyance, she fully intended to, and did, establish in de-

fendant a present interest in the real estate. Even though she, as grantor, remained in possession and continued to manage the property, as she claims, after duly executing and recording a deed absolute in form conveying the property without reservations, the delivery of the deed is unaffected, and any mental reservation on her part contrary to her words and acts is ineffective to invalidate such delivery. *Szymczak* v. *Szymczak*, 306 Ill. 541; *Nowakowski* v. *Sobeziak*, 270 Ill. 622.

Likewise, there is no support in the evidence for plaintiff's contention that the conveyance was based upon a mistake material to the transaction, rendering it inequitable for defendant to retain any portion of the property. This contention is predicated upon the theory the deed was given because of her asserted belief at the time that defendant was her husband. Knowledge of the nonmarital status of the parties constituted information peculiarly available to her, as well as to defendant. Where the chancellor hears conflicting evidence in open court, as here, his findings will not be disturbed unless manifestly and palpably against the weight of the evidence. (*Greer* v. *Carter Oil Co.* 373 Ill. 168; *Hall* v. *Pittenger*, 365 Ill. 135.) The chancellor who saw and heard the parties and their witnesses was amply warranted in deciding that the execution and delivery of the deed, under the circumstances here present, was understandingly done.

Since the proof is insufficient to establish plaintiff's right to have the deed set aside, it becomes unnecessary to consider the remaining contention that her complaint was erroneously dismissed for failure to come into a court of equity with clean hands.

The decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*