Alberta FORBES, Administratrix of the Estate of Catherine Volk, deceased, Appellant (Defendant below),

v.

Arthur C. VOLK, Jr., Appellee (Plaintiff below),

and

Alberta Forbes, and William B. Sadler and Onita Miller, heirs at law of Catherine Volk, Defendants.

No. 2956.

Supreme Court of Wyoming.

Jan. 24, 1961.

Clarence A. Swainson, Cheyenne, Swainson & Swainson, Cheyenne, on the brief, for appellant.

Walter C. Urbigkit, Jr., Cheyenne, for appellee.

Before BLUME, C. J., and PARKER and HARNSBERGER, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

In this action Arthur C. Volk, Jr., as plaintiff, brought this action against Alberta Forbes, the duly appointed administratrix of the estate of Catherine Volk, and Alberta Forbes, William B. Sadler and Onita Miller, heirs at law of Catherine Volk, for a declaratory judgment in regard to a deed executed by Catherine Volk on March 19, 1955. That deed conveyed the east twenty-two feet of Lot 7 and the south eighty-eight feet of the west twelve feet of Lot 8 in Block 602 in the City of Cheyenne and the north forty-four feet of Lot 8 in Block 602 in the City of Cheyenne. The complaint alleges that this deed was executed on March 19, 1955, and was duly recorded on March 19, 1955, in Book 565, page 223, of the records of the County Clerk, Laramie County, Wyoming. Plaintiff also alleged that the claim of the defendants constitutes a cloud on the plaintiff's title. An answer was filed by the administratrix of the estate alleging that on March 19, 1955, Catherine Volk was the

owner of the property hereinbefore mentioned; that she died intestate on October 27, 1958, leaving the defendant parties hereto as heirs at law; that the deceased, Catherine Volk, in executing the deed above mentioned never intended that it should become operative and effective during her natural lifetime and never intended that the plaintiff should acquire a present interest in and to the property; that the deceased used, occupied, controlled, operated, managed, leased and in all other respects dealt with and acted toward the foregoing property as the owner thereof and represented herself as such owner during her lifetime; and that the foregoing deed to the plaintiff is testamentary in nature and void because not executed as a will as required by law.

After trial of the case judgment was duly entered in favor of the plaintiff, declaring him to be the owner of the property above mentioned and declaring the defendants above named to have no interest therein. From that judgment the administratrix has appealed to this court.

The deed aforesaid is in the form of a deed permitted by the statutes of this state and states as follows:

"That the Grantor for and in consideration of the natural love and affection which she has for the Grantee, has given, granted, bargained, conveyed, released and confirmed, and by these presents does give, grant, bargain, convey, release and confirm unto the Grantee, his heirs and assigns forever, all the following described real estate situate in the County of Laramie, State of Wyoming, to wit,

"Parcel Number One: The East Twenty-two (22) Feet of Lot Seven (7), and the South Eighty-eight (88) Feet of the West Twelve (12) Feet of Lot Eight (8), in Block Six Hundred and Two (602), in the City of Cheyenne;

"Parcel Number Two: The North Forty-four (44) Feet of Lot Eight (8), in Block Six Hundred and Two (602), in the City of Cheyenne;

"Subject however to that certain mortgage upon parcel number two above in the amount of six thousand one hundred and fifty dollars ($6,150.-00) dated March 14, 1955, recorded March 14, 1955, in book 574 of Mortgages, at page 411 thereof.

"To have and to hold the premises, together with all the hereditaments and appurtenances thereunto belonging, or in anywise appertaining, to the Grantee, his heirs and assigns forever.

"And the Grantor covenants with the Grantee, his heirs and assigns, that she is seised of the premises in fee simple and has the right to convey the same; that the premises are free and clear from all encumbrances except as aforesaid, which Grantor covenants and agrees to pay and satisfy, and Grantor will warrant and forever defend the title to the premises against the claims and demands of all persons whomsoever."

In setting out the evidence in this case, we shall to a very large extent follow the statement, somewhat modified, as contained in the brief of counsel for the appellant. This evidence is as follows: Three or four days prior to March 19, 1955, Catherine Volk consulted her attorney, Harold Mai, relative to preparing a deed conveying the real estate above mentioned. The attorney prepared the deed. Deceased stated to Mai that her purpose was that she desired to give the property to her son, Arthur C. Volk, Jr., and that she did not want the other heirs to have it, and for that purpose she wanted to know how she could be absolutely sure. She wanted to execute the deed at that time and wanted her son, Arthur C. Volk, Jr., to have full title to the real property. She was going to continue running the store on the property herein mentioned and wanted the title to the property vested in her son so that no other heir could obtain an interest in it. She wanted it to be a gift to him and wanted it vested in him at once. This testimony was objected to as being a privileged communication between an attorney and a cli-

ent but the objection was overruled. The attorney prepared the deed according to the instructions. The deceased signed it in his presence and she acknowledged it before a notary public. The deed was then delivered to Mai and he had it recorded. When it was returned he mailed it to the appellee according to the instructions of Mrs. Volk, who requested that the deed be sent to and be in the possession of the plaintiff and appellee, Arthur C. Volk, Jr. She and the grantee prepared a gift tax return and filed it with the Internal Revenue Department of the United States. Nothing was paid for the property by the grantee of the deed but it was considered a gift made on account of love and affection. By further evidence in the case it appears that deceased told Mai that she did not want any of the other children to have the property and that the property was mortgaged and she wanted the gift to be free of mortgage and intended to continue making payments thereon.

The plaintiff himself testified that he was the son of the grantor; that the deed in question was mailed to him on April 27, 1955. While he was living in Denver prior to March 1955, his mother told him that she wanted to give him the property in question. At the time when the deed was executed the property was improved by store buildings and there was a mortgage of a considerable amount which grantor paid. The grantor built and paid for a garage and house on the property after the execution of the deed and collected the rent. Plaintiff paid taxes on the property but was reimbursed by Mrs. Volk. The witness made financial statements to local institutions but did not list the property in question as an asset. Mrs. Volk paid premiums for insurance on the property and collected a hail loss.

The defendant, Alberta Forbes, administratrix, testified that she is the daughter of Catherine Volk who died October 28, 1958, and that she is the administratrix of her estate and that she had no knowledge of the execution of the deed until after her mother's death. She lived near her moth-

er's residence from 1954 to 1958 and assisted her in her business affairs and visited her two or three times a week. From 1955 to 1958 the property was occupied by Mrs. Volk who lived in the store and rented the house which was under construction when the deed was executed, Mrs. Volk paying for the construction. Mrs. Volk attempted to sell the property several times and listed it for sale with three different parties. The defendant testified that the deceased paid the taxes and insurance on the property.

Tom Searl, a real estate broker, testified that on May 10, 1955, Catherine Volk listed her property above mentioned with him for sale for the period of thirty days and that he had an offer on the property but that she rejected it.

Exhibits in the case show that a gift tax return was made by the deceased, Catherine Volk, and by the plaintiff, Arthur C. Volk, Jr. One insurance policy, apparently executed on May 10, 1956, insured the property in the names of Catherine Volk and Arthur C. Volk, Jr. Another insurance policy, dated January 25, 1958, was made out in the name of Catherine Volk alone. The assessment schedule for 1955 was made in the name of Arthur C. Volk, Jr., by Catherine Volk. The assessment schedule for 1957 was signed only by Arthur C. Volk, Jr. The assessment schedule for 1958 was made in the name of Arthur C. Volk, Jr., by Catherine Volk.

The contentions of the appellant are, first, that the evidence shows that Mrs. Volk never intended the deed to appellee to take effect until death and was testamentary in nature and void; and, second, that some of the evidence of Harold Mai consisted of privileged communications and the trial court was in error in overruling the objection to that testimony. We shall consider these contentions in their order.

1. An instrument which passes a present interest in realty is a deed and not a will and not an instrument testamentary in character. 1 Page, Wills (1960), p. 245; 94 C.J.S. Wills § 137, p. 916, n. 23 (1956). There can hardly be any doubt in examining

the deed hereinbefore set out that it purports to pass a present interest in the property. That is illustrated, for instance, in the case of Crowley v. Engelke, 394 Ill. 264, 68 N.E.2d 241, 251. In that case an assignment reciting " 'I hereby sell, assign, grant and convey * * * all of my right, title and interest * * * which I as an heir-at-law, legatee, devisee * * * may be entitled to or which my estate will possess after my death' " was valid as presently operative and was not testamentary in character. A deed is presumed to be what it purports to be. When it is sufficient to vest title and is executed and delivered, the law presumes an intent to pass title in accordance with its terms, and the burden rests on the one who avers a different intention. 26A C.J.S. Deeds § 181 (1956). The effect of a deed of that character when delivered is succinctly stated in the case of Klouda v. Pechousek, 414 Ill. 75, 110 N.E.2d 258, 262, as follows:

" * * * A deed signed, sealed, and delivered becomes at once binding and effective, and from thenceforth it is irrevocable and unchangeable. If not delivered it is not effective and is not a deed. The delivery is as necessary to make it a deed as the signing and sealing. In order that a writing in form a deed may be held to be testamentary, it must lack delivery. If the instrument in form a deed is delivered it at once becomes binding and effective, and cannot thereafter be revoked or changed. Such an instrument is not testamentary in character. * * *"

The question then remains as to whether or not the deed was delivered. It came into possession of the grantee and it was recorded. These facts raise a presumption that it was delivered. Snyder v. Ryan, 39 Wyo. 266, 270 P. 1072, 1075, 275 P. 127; 26A C.J.S. Deeds §§ 184b and 187 (1956). But counsel for appellant contend that the fact that the grantor remained in possession of the property and acted as though she continued to be the owner shows that the deed was not intended to become operative at once but was testamentary in character. They state:

"After the execution and recording of the deed, the grantor built a garage and house upon the property and paid for same, and collected rents; she paid the taxes; she insured the property, paid the premiums and collected hail loss. She occupied the property during her lifetime; filed assessment schedules with the County Assessor.

"She attempted to sell the property, and listed it for sale with three different realtors."

In support of their contention counsel cite us to Henneberry v. Henneberry, 164 Cal. App.2d 125, 330 P.2d 250; Rousseau v. Hurtado, 122 Cal.App.2d 705, 265 P.2d 580; Burke v. Burke, 141 S.C. 1, 139 S.E. 209, 56 A.L.R. 729; Counter v. Counter, 104 Cal. App.2d 786, 232 P.2d 551. These cases, however, are quite different from the case at bar. Take the last cited case for instance. In that case there were two grantors, husband and wife. A deed was executed to a son. One of the grantors, still living, sought to cancel the deed subsequently. It was actually manually delivered to the son. But almost immediately it was redelivered to one of the grantors, he stating: " 'I don't want this recorded until something happens to me. * * * I still own it.' " 232 P.2d 553. He placed the deed in a box but it was surreptitiously removed and so got into the possession of the son.

In the case at bar, the deed was signed by the grantor; it was delivered to her attorney in order to be recorded and then to be delivered to the grantee at the special request of the grantor. She executed a gift return and signed some assessment schedules in the name of the grantee, evidencing an intent to have the deed operative when executed. However, it appears to be true that in certain cases the continued possession by the grantor might throw a doubt on the question of delivery of the deed as a deed to become operative at once. Thus it is said in Jeppesen v. Jeppesen, 249 Iowa 702, 88 N.W.2d 633, 638, which cites many authorities, that the

grantor's continued possession and control of the property and exercise of acts of ownership strongly negatives delivery. When a gift is made by deed, delivery of the property is not necessary. See 38 C.J.S. Gifts § 22b (1943); Annotation, 48 A.L.R.2d 1405, 1407. As to the continued possession by grantor in connection with gifts, see 38 C.J.S. Gifts § 26 (1943). In connection with deeds generally it is stated in 26 C.J.S. Deeds § 42a, pp. 686, 687 (1956):

"* * * In determining whether delivery has occurred, the fact that the grantor continued to exercise rights of ownership in the property is an important fact to be considered, but it is not controlling. The fact that the grantor remains in possession of the land after a deed is made is also an important fact in determining whether a deed, made to a party out of possession, has been delivered, conversely, the grantee's lack of possession of the land and of the deed must also be considered. It is generally stated, however, that in determining whether the grantor intended delivery, the test is not whether the grantor has retained possession or control of the property conveyed, but rather whether he has retained possession or control of the deed."

In the case of Blackledge v. McIntosh, 85 Cal.App. 475, 259 P. 770, 772, it appears that after the execution of a deed to property the grantor paid the taxes thereon, appeared in an action involving one of the pieces of property as legal owner thereof, collected rents from some of the property, made repairs and improvements upon another piece of the property, and made returns to the assessor for assessment purposes as the legal owner of the property. Answering the claim that the deed was testamentary in character, the court stated:

"All these facts, while tending to show a continuing claim of title by Mrs. McIntosh to the property theretofore conveyed to defendant, were merely circumstances to be weighed by the trial court against the affirmative evidence of delivery given by defendant.

These facts, taken with the other facts testified to by defendant and her witnesses, did no more than raise a conflict of evidence on the vital issue of the sufficiency of the delivery of the deeds to pass title to the defendant, and, the trial court having resolved that conflict in favor of the defendant, such a finding will not be disturbed by this court where there is any substantial evidence to support it. * * *"

In the case of Chaffee v. Sorensen, 107 Cal. App.2d 284, 236 P.2d 851, 855, a similar claim was made that the deed in question was testamentary in character, and the court mentioned the facts in that connection as follows:

"The payment of taxes, insurance, and repairs on the property by Chaffee [the grantor] in his lifetime and by the executrix of his will after his decease are merely circumstances to be weighed and that were weighed by the trial court against other evidence in the case and particularly the affirmative evidence of delivery given by Alice and Mr. Fletcher, the only persons present when the deed was signed, acknowledged and delivered. Such facts did no more than raise a conflict of evidence on the vital issue of the sufficiency of the delivery of the deed to pass title, and the trial court having resolved that conflict its finding will not be disturbed by this court. * * *"

In Longley v. Brooks, 13 Cal.2d 754, 92 P.2d 394, 399, a deed was executed but the grantor remained in the possession of the property thereafter. The court said in that connection:

"Neither can it be said there is merit in the contention of appellants that after the asserted delivery of the deed, certain acts of the grantor allegedly showing an exercise by her of dominion or control over the property conclusively negatived an intent on her part to have transferred title to the ranch by the delivery of the deed. In view of the many circumstances which showed

an intention on the part of Marcia Brooks to part with title to the land, neither the fact that after the alleged delivery of the deed to Emery Brooks the taxes on the property continued to be assessed to her, nor that, personally, she rented the property and collected the rentals therefrom, and personally attended to other business matters relating to the property, is sufficient to overcome an inference of delivery of the deed and consequent transfer of title which was deducible from other evidence. * * *"

This quotation was approved and set forth in the case of Cirimele v. Lucchesi, 100 Cal. App.2d 371, 223 P.2d 681, 684, 685.

Walsh v. Kennedy, 115 Mont. 551, 147 P.2d 425, 430, 431, is a case very much like the case at bar. The court in that case stated:

"* * * It is elementary that the transfer of actual possession is not a necessary element of the conveyance of real estate, and the grantor's continued occupancy is not inconsistent with her alienation of title. * * *

"The record indicates a delivery of the deed, accompanied apparently by a tacit understanding that the grantor should retain possession of the premises while she lived. As pointed out above, such an understanding is not inconsistent with the transfer of title * * *. The conclusion is not unjustified, if indeed it is not inescapable, that her continued use and occupancy were to exist under defendant's title and not in derogation of it, and that she was relying upon him in that respect, just as she was relying upon him not to exhaust the joint checking account although he had the opportunity and perhaps the legal right to do so. Certainly defendant's forbearance to exercise the full right of possession immediately in both respects is no evidence that he did not own the title; it is at least equally consistent with the more normal assumption that he thereby merely justified her confidence in him in giving effect to a tacit, and perhaps unenforceable, understanding. It is obvious that what she was retaining until her death was, not the title, of which she had fully divested herself by the execution and delivery of the deed, but the right of possession, which it was tacitly understood she was to have. The evidence cannot, therefore, logically be taken as proof of an attempted testamentary disposition rather than a completed conveyance."

To the same effect are Gulledge v. Mitchell, 242 Ala. 342, 6 So.2d 22; Sasseen v. Farmer, 179 Ky. 632, 201 S.W. 39; Reed v. Gunter, 101 W.Va. 514, 133 S.E. 123; Leighton v. Leighton, 196 Iowa 1191, 194 N.W. 276. In Brozina v. Wanda, 387 Ill. 46, 55 N.E. 2d 145, the court held that the delivery of a deed was unaffected by continued possession on the part of the grantor. In re Hulteen's Estate, 170 Kan. 515, 227 P.2d 112, the court said that the test in that connection is not whether the grantor has retained possession or control of the property but, rather, whether he has retained possession or control of the deed.

■ In the case at bar, the grantor executed the deed and directed it to be recorded and then delivered to the grantee, which was done. There can scarcely be any doubt that in the light of the foregoing authorities the court was fully justified in its conclusion that the grantee become the owner of the property, even without the evidence which counsel for appellant consider confidential communications. That evidence, of course, made the conclusion of the court more inevitable. So we shall briefly consider as to whether or not the evidence as to what the grantor said to her attorney constituted communications which were privileged and not admissible in evidence.

■ 2. It is stated in 97 C.J.S. Witnesses § 292, p. 823 (1957):

"It is generally considered that the rule of privilege does not apply in litigation, after the client's death, between parties, all of whom claim under the client; and, so, where the controversy is to determine who shall take by suc-

cession the property of a deceased person and both parties claim under him, neither can set up a claim of privilege against the other with respect to the communications of deceased with his attorney.  *  *  *"

The rule has often been applied in cases in which the heirs of the grantor or others sued the grantee of a deed for recovery of the property conveyed.  First Security Bank of Utah v. Burgi, 122 Utah 445, 251 P.2d 297;  Maxwell v. Harper, 51 Wash. 351, 98 P. 756;  Olsson v. Pierson, 237 Iowa 1342, 25 N.W.2d 357;  Warner v. Kerr, 216 Mich. 139, 184 N.W. 425;  Boyd v. Kilmer, 285 Pa. 533, 132 A. 709;  Middletown Trust Co. v. Crowell, 89 Conn. 290, 93 A. 785;  Scott v. Harris, 113 Ill. 447;  Schutz v. Leary, 123 Ind.App. 100, 106 N.E.2d 705.

It follows from what we have said that the judgment of the trial court should be and is hereby affirmed.

Affirmed.